[Civil No. 3249. Filed January 16, 1933.]

[18 Pac. (2d) 256.]

JOHN TOLMACHOFF and ESTHER TOLMA-CHOFF, His Wife, Appellants, v. LOUIE KA DEL ESHBAUGH, Appellee.

Mr. L. J. Cox, for Appellants.

Mr. W. T. Sprowls, for Appellee.

LOCKWOOD, J.—Louie Ka Del Eshbaugh, hereinafter called plaintiff, brought suit against John Tol-

machoff and Esther Tolmachoff, his wife, hereinafter called defendants, under the provisions of section 4359, Revised Code 1928, to recover possession of certain realty described in the complaint, alleging that she was the owner and entitled to the immediate possession of the same, and that defendants unlawfully kept her out of possession. Defendants answered, denying the allegations of the complaint, and averring that the equitable title and the right to the possession of the property was in defendant John Tolmachoff under a certain agreement for the purchase and sale of the property made between plaintiff and defendants. Defendants further filed a cross-complaint asking that their title to the property be quieted in accordance with the terms of said contract of purchase and sale. Plaintiff demurred to the cross-complaint, which demurrer was duly sustained. She then replied admitting that defendant was in possession under the contract above referred to, but alleging that it had been forfeited by her for failure on the part of defendants to comply with its terms. The case went to trial before a jury on the complaint and answer, a verdict being returned in favor of the plaintiff, and from the judgment rendered thereon and the order overruling the motion for new trial this appeal is taken.

There are some nine assignments of error, but we think we need consider only the first and the fifth. The first is that the court erred in sustaining plaintiff's demurrer to defendants' cross-complaint. Section 4359, under which the action was brought, reads as follows:

*"Possessory Action; Counterclaim.* Any person having a valid subsisting interest in real property, and a right to the immediate possession thereof, may recover the same by action against any person acting as owner, landlord or tenant of the property claimed.

The action shall be commenced and prosecuted as other civil actions, but there shall be no counterclaim therein except of like proceedings, as herein provided.''

We have held in *Genardini* v. *Kline*, 19 Ariz. 558, 173 Pac. 882, that the action authorized by this section is in the nature of an action in ejectment at common law. At common law ejectment was purely a possessory action, and, even as modified by statute, and though based upon title, it is still essentially of that nature, and is confined to cases where the claimant has the possessory title. 9 R. C. L. 927.

The counterclaim, on the contrary, is in effect an action for an injunction and to quiet title, a very different proceeding from ejectment. We are of the opinion that under the provisions of the statute above quoted the trial court properly sustained the demurrer to defendants' cross-complaint.

The second assignment of error is that the court erred in refusing defendants' motion for an instructed verdict at the close of all the evidence.

There is singularly little dispute as to the real facts in the case, and we therefore state them as follows: In 1917 plaintiff, who was then the owner of the premises involved in this action, entered into an agreement of purchase and sale with defendant John Tolmachoff. The latter went into the possession of the premises, and ever since that time has been in possession thereof under the original agreement; a substituted agreement made in 1925, and a modification thereof made in 1926. By the terms of the last agreement as modified defendants were to pay plaintiff $10,463.58 as the purchase price of the land as follows: $500 or more on November 29th for each of the years 1927, 1928, 1929, 1930, and 1931, and the balance of the principal on November 29th, 1932. Interest was to be paid on all deferred payments semi-

annually at the rate of eight per cent. per annum, and, if not paid as due, was to be compounded, while defendants were also to pay all taxes on the premises. The agreement contained the following clause:

" . . . It is further agreed that time is the essence of this agreement and in the event of default in making any of the payments herein provided to be made promptly, when same become due and payable, or in the event of failure of the party of the second part promptly to comply with any of the terms hereof, then the said party of the first part shall be relieved from all obligations in law or in equity to convey said property, and at the option of said party of the first part, the said party of the second part shall forfeit all right thereto, and all interest of the party of the second part in and to said lands by reason of his agreement shall thereupon cease and determine, subject to the provisions hereinafter contained, and all moneys theretofore paid under the terms of this agreement to the party of the first part shall be forfeited to, and retained by, said party of the first part. . . . Provided, however, that no forfeiture hereunder shall be enforced until and after the expiration, after such default, of the periods hereinafter provided for and it shall be lawful so to do when such default shall have continued for such periods, to-wit:

"In cases where the purchaser has paid less than 20% of the purchase price—30 days. . . . "

Plaintiff placed a warranty deed to said premises, together with a copy of the agreement, in escrow with the Phoenix Title & Trust Company, which was to be delivered to the defendants when all payments had been made.

Defendants paid all the sums due on principal and interest up to the payment due on November 29th, 1930, being some eight installments. Only the first of these payments, however, was made upon the day that it was due, the others being delayed all the way from one or two days to as much as six weeks, but being

accepted by plaintiff when paid apparently without question. There was a payment of $500 due on November 29th, 1930, together with the semi-annual interest. This payment was not made when due, but on the twenty-third day of December, 1930, the interest was paid, which was duly remitted to plaintiff and accepted by her. There was another semi-annual interest payment due on the twenty-ninth of May, 1931. This payment was not made when due, and on July 15th plaintiff wrote the escrow-holder inquiring in reference to the payments then past due, being the $500 due the previous November and the semi-annual interest due May 29th of the current year. In the meantime, not having received her money she began an investigation, and discovered that defendants had not paid the taxes on the premises for four years. She had some correspondence with the escrow-holder urging that it see that defendant make his delinquent payments, and in the latter part of August the escrow-holder wrote defendant, urging payment. In response to this request, defendant on September 9th, 1931, paid the semi-annual interest on the full amount due, including accrued interest up to the date of payment, which amount was remitted by the escrow-holder to plaintiff on September 10th and by her received and retained. This took care of all payments due up to November 29th, 1931, with the exception of the $500 payment due on the principal November 29th, 1930, and the delinquent taxes. Up to this time, while plaintiff had been continually urging the escrow-holder that it make collections from defendant, she had declared no forfeiture of the contract either to the escrow-holder or to defendant. Thereafter, and on the thirteenth day of October, 1931, she sent both to defendants and to the Phoenix Title and Trust Company, as escrow-holder, the following notice:

"Phoenix, Arizona, October 13, 1931.
"To John Tolmachoff and Phoenix Title and Trust Company:

"Because of the failure of John Tolmachoff, his heirs, executors, administrators or assigns, to make the payments as provided to be made under the terms of the agreement for sale dated September 28, 1925, between Louie Ka Del Eshbaugh, a widow, as Seller and John Tolmachoff, as Buyer, for the sale and purchase respectively of a part of section 11, Township 2 North, Range 1 East, more particularly described as follows: . . . The undersigned elects to declare the contract forfeited and enforce the forfeiture provisions in accordance with the terms of said agreement; and hereby demands immediate delivery to her by the Phoenix Title & Trust Company of the Quitclaim deed executed by the said John Tolmachoff, a widower, in favor of Louie Ka Del Eshbaugh, and held in escrow by the said Phoenix Title and Trust Company under the Escrow 13849; and further demands within ten days from this date, possession of the above described premises from the said John Tolmachoff, his heirs, executors, administrators or assigns.

"LOUIE KA DEL ESHBAUGH."

This notice was received by defendant on the fifteenth day of October, and on the eleventh day from said time, the tenth day being on Sunday, he tendered to plaintiff the full amount then due under said contract, including the $500 delinquent payment, all interest to date, and the amount necessary to pay the delinquent taxes with interest and all penalties, and, plaintiff refusing to receive the same, he paid the amount of the taxes into the hands of the escrowholder. On the twenty-eighth day of October, 1931, this action was filed.

It is the position of plaintiff that under the terms of the contract she had the right to declare the same forfeited at any time after any payment was delinquent for thirty days, and that, upon such declara-

tion being made by her, the default having existed for the said thirty days, all rights of defendant under the contract were terminated, and she could recover possession of the premises, retaining the sums already paid thereon. It is the contention of defendant, among other things, that plaintiff, having repeatedly accepted payments of installments long after the same were overdue without declaring a forfeiture, and in particular having accepted the payment of the interest made on September 8th, 1931, long after it was due, could not declare a forfeiture without having first notified defendant that it was her intention thereafter to stand on the strict letter of the contract in regard to forfeiture and giving him a reasonable time in which to make up all delinquent payments.

We have had a very similar situation before us in the case of *Stark* v. *Norton*, 24 Ariz. 454, 211 Pac. 66. The situations in the two cases are so much alike in substance and the rule of law laid down is so full and precise that we quote somewhat at length from that case as follows:

" . . . Appellants' contention rests upon the proposition that under the terms of the agreement appellees forfeited their right and interest in the property, as well as all payments theretofore made, by their failure to meet the installments, the interest, and the taxes as they became due, inasmuch as time was of the essence of the agreement and not waived by any act of appellants. It is a rule of general application that where time is made of the essence of a contract of sale the failure to pay the purchase price, or any installment thereof, gives the vendor the right to declare a forfeiture of the contract. *Douglas* v. *Hanbury*, 56 Wash. 63, 134 Am. St. Rep. 1096, 104 Pac. 1110; *Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1, 69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713; *Peterson* v. *Davis*, 63 Kan. 672, 66 Pac. 623; 39 Cyc. 1340. But it is equally well settled that such right must be clearly established, and that it can be waived by the vendor, since the

essence clause is inserted for his benefit and its observance is in no sense essential to a continuation of the other provisions of the contract. *Bennie* v. *Becker-Franz Co.*, 14 Ariz. 580, 134 Pac. 280; 39 Cyc. 1345; *Boone* v. *Templeman,* 158 Cal. 290, 139 Am. St. Rep. 126, 110 Pac. 947; *Whiting* v. *Doughton,* 31 Wash. 327, 71 Pac. 1026; *Douglas* v, *Hanbury, supra.* A waiver, it is true, must be clearly proven also, but this may be done—

" 'by express declaration or agreement, or by acts and conduct manifesting an intent and purpose not to claim the supposed advantage, or by so neglecting and failing to act as to induce a belief that it was the intention and purpose to waive.' 27 R. C. L. 911.

"From the complaint, which in this respect is admitted, as well as from the cross-complaint, it appears that when the forfeiture was declared, September 6, 1921, appellees had paid and appellants had accepted the first twenty-one installments of the principal and three installments of interest, and that, of the former, five only were on the dates called for by the agreement, six were one day late, five two days, one four days, one sixteen days and two more than thirty days; and that of the latter or interest installments one was thirty, one forty-four, and one sixty-four days late. The conduct of appellants, permitting the time for so many payments to pass without declaring a forfeiture for the failure to meet them, followed in each instance up to June 1, 1921, by an acceptance of the past-due installments, justifies the conclusion that they had foregone the essence clause of the contract and constitutes a waiver of it. *Douglas* v. *Hanbury, supra; Boone* v. *Templeman, supra; Burmester* v. *Horn,* 35 Cal. App. 549, 170 Pac. 674. By the same authorities forbearance to act upon the failure to pay one installment or the acceptance of one past-due payment would not of itself constitute conduct amounting to a waiver, but forbearance or acceptance repeated so frequently as in this instance does. *Garvey* v. *Barkley,* 56 Wash. 24, 104 Pac. 1108. . . .

"The rights of appellants up to September 5, 1921, or to such time as they might have fixed in a notice to appellees as the date on which the essence clause

of the contract would be reinstated, were limited to a recovery of the payments due and the giving of the notice of reinstatement. The essence clause having been waived, they were powerless to forfeit the contract for failure to meet the installments until it had again been made a part of that instrument, and this could only be done by appellants' giving appellees notice that after a certain date, allowing a reasonable time, they would be required to meet the payments as called for in the agreement. *Andrews* v. *Karl,* 42 Cal. App. 513, 183 Pac. 838; *Gray* v. *Pelton,* 67 Or. 239, 135 Pac. 755; *Monson* v. *Bragdon,* 159 Ill. 61, 42 N. E. 383; *Keator* v. *Ferguson,* 20 S. D. 473, 129 Am. St. Rep. 947, 107 N. W. 678; *Whiting* v. *Doughton, supra; Douglas* v. *Hanbury, supra; Boone* v. *Templeman, supra.''*

We are of the opinion that the rule laid down in *Stark* v. *Norton, supra,* is sound law and applies to the facts of the present case. For the foregoing reasons, it appearing that within a reasonable time after being notified that plaintiff intended to rely upon the strict time clause of the contract defendants tendered to her all payments of every nature then due, including all taxes, interests, costs and penalties, the trial court should have rendered judgment for defendants, this judgment, of course, being without prejudice to the right of plaintiff to bring another action for any subsequent default. The judgment of the superior court of Maricopa county is reversed, and the case remanded, with instructions to render judgment in favor of defendants.

ROSS, C. J., and McALISTER, J., concur.