No. 18,541.

JOHN ASHBACK *v.* ROBERT O. WENZEL, ET AL.
(346 P. [2d] 295)

Decided November 16, 1959.

Mr. GEORGE V. KEMPF, for plaintiff in error.

Messrs. STEWART & BROWN, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will refer to plaintiff in error by name, and to defendants in error as the corporation or Wenzel, or as defendants.

February 7, 1957, Ashback filed his complaint for damages allegedly sustained by him for breach of contract. All material allegations of the complaint were denied by defendants. The issues were tried to the court without a jury and judgment was entered in favor of defendants. Ashback, seeking review of the judgment, brings the cause here by writ of error.

The contract upon which the action was brought was between Ashback as "seller" and Wenzel and the corporation who were referred to as "buyer." Ashback owned stock in the corporation. He sold it to the corporation in consideration of the execution and delivery of three promissory notes — one for $20,000.00, one for $17,445.59, and one for $5,915.21. These notes were signed by the corporation, and by Wenzel individually, and were secured by mortgage upon the corporate property.

Paragraph 3 of the contract provided:

"As further consideration for the sale of said stock as aforesaid, Buyer agrees that during the term that the note described in paragraph 1 above, shall remain unpaid and for a period of five (5) years thereafter, it shall purchase all of the wholesale gasoline which it buys for resale from the seller at a price of one cent (1¢) per gallon above the current wholesale price which seller receives for gasoline, PROVIDED, that if seller shall be unable to supply the needs of the buyer within 24 hours after notice, buyer shall have the right to purchase gasoline elsewhere, PROVIDED FURTHER, that seller shall have the right to refuse delivery of gasoline if buyer at any time becomes indebted to the seller for gasoline in an amount greater than $6000.00."

The complaint alleges, inter alia:

"7. That the provisions of Exhibit 'A' requiring Defendants to purchase gasoline from Plaintiff at a price of one cent per gallon over current wholesale price, was the principal consideration for the execution by Plaintiff of said contract.

"8. That since about June 28, 1956, Defendants have failed and refused to purchase said wholesale gasoline from Plaintiff or to pay to Plaintiff the amount of his loss of profit from such sales, and Defendants have purchased gasoline at wholesale from other distributors.

\* \* \*

"11. That by reason of the refusal and failure of Defendants to purchase gasoline from Plaintiff, Plaintiff has lost great gains and profits in the sum of $10,000.00 and will lose thereby large gains and profits while said contract is in effect in the sum of $30,000.00."

After answer filed by defendants, Ashback filed a supplemental complaint in which he alleged a default in the payment of the current installment due upon the notes mentioned in the contract, and an election to declare the entire indebtedness due under the acceleration clause of the notes. To these allegations defendants answered by asserting a waiver by Ashback of punctual payments on the notes, and an estoppel by reason of which he could not demand payment of the notes in full.

After the stock was transferred and the management of the corporation was taken over by Wenzel, he leased out the gasoline bulk plant, theretofore operated by the corporation, and otherwise curtailed operations which resulted in a reduced amount of gasoline which the corporation was obligated to buy from Ashback. The loss of gallonage handled by the corporation was due in some degree to the inexperience of Wenzel in the gasoline business, and particularly from competition arising from the business established at Naturita by one Burnett who had sold his stock to Wenzel just prior to the transaction under which Ashback sold his stock as per the contract involved in this case. Burnett increased his business

from 12,000 gallons to 30,000 gallons per month and this increase is comparable to the loss suffered by Wenzel and the corporation.

The theory upon which Ashback based his claim for damages was that Wenzel and the corporation had failed to buy from him the gasoline which was contemplated by the contract; that the contract, notes and mortgages constituted a single transaction; that some of the mortgaged chattels had been sold by defendants; and that he had suffered a loss of $10,000.00 and would suffer an additional loss of $30,000.00 because of the failure of defendants to purchase gasoline from him as provided in the contract.

The trial court made findings which contained the following:

" * * * the defendants agreed to purchase all of the wholesale gasoline which it buys for retail from the seller plaintiff herein at a price of one cent per gallon above the current wholesale price. However, there was no restriction in said contract against the sale of the bulk plant and other filling station part of the property involved. The Court further finds that defendant bought all his gasoline from plaintiff, which he purchased for resale except such as was purchased from one I. Sander by arrangement with plaintiff, and on which plaintiff received his one cent per gallon bonus; that no minimum amounts of gasoline were the defendants compelled to purchase. The Court further finds that defendant kept the terms of the contract by buying from plaintiff, and sent several orders to plaintiff on or about August of 1957, which plaintiff refused to fill, and in that regard the plaintiff himself in the judgment of the Court, breached the contract. * * * "

The reason given by Ashback for refusal to make deliveries of their orders, was that the quantity involved was too small to justify the trip.

Questions to be Determined.

First: *Was the evidence sufficient to support the find-*

*ings of the trial court that defendants had not violated their contract?*

■ This question is answered in the affirmative. We have read the complete transcript of the evidence and suffice it to say that there was ample evidence to support the findings of the trial court, and its judgment based on competent evidence will not be disturbed on review.

Second: *Where the maker of a promissory note, payable in monthly installments, customarily makes his payments at a later date than is provided for in the note, over a period of thirty-one months, and the payee of said note accepts such late payments without protest or objection for the entire thirty-one months period; will said payee be permitted to declare the entire balance of such note due and payable at once without notice to the maker that he intends in the future to demand prompt payments?*

■ This question is answered in the negative. Findings of the trial court, which are amply supported by the evidence, are, inter alia, as follows:

" * * * It is further found that defendant was late in making the most of his payments as called for in the note and contract, but all of which payments which he made were accepted by the plaintiff except those of August of 1957. The Court further finds that at times the lateness of receipt of such checks in payment of obligations due plaintiff may have occurred because of the time consumed in the mail reaching Durango. However, for some 31 months plaintiff accepted these checks without protest. It is true that the payments due August 1 and August 10 on the notes were late, but during the interim negotiations were being had for settlement. The Court further finds that payments have been made on the note in large amounts, and in all plaintiff has received from defendant in excess of $40,000.00. It is further the finding of the Court that plaintiff waived the defaults so far as time of payments on the note were

concerned, and that it would be inequitable to grant judgment for the plaintiff at this time."

The record shows that some of the late payments were made and accepted after the original complaint was filed in this action. This practice continued until August 1957. During the period when negotiations were being carried on for settlement of the litigation, Ashback, without warning, declared the entire unpaid balance due and payable. The trial court correctly adjudged that it would be inequitable to enter judgment for the full amount of the unpaid balance on the notes.

In *Barday v. Steinbaugh, et al.,* 130 Colo. 10, 272 P. (2d) 657, this court, in a set of facts very similar to the case at bar, said, inter alia:

"Plaintiff's conduct in receiving delayed payments throughout the entire period could be relied upon by defendants and justify them in believing, and acting, on that belief, that plaintiff's right of acceleration would not be exercised without an opportunity for protection by payment of the amounts due."

See also *Pomeroy's Equity Jurisprudence,* Vol. 2, 3rd Ed., Section 804, page 1421.

The judgment of the trial court is affirmed.