Submitted on briefs March 9, affirmed as modified and remanded
July 1, 1976

# FISHER, *Appellant,*
## *v.*
# TIFFIN, *Respondent.*

551 P2d 1061

Gordon H. Price, Molalla, for appellant.

HOWELL, J.

**HOWELL, J.**

This is a suit to foreclose a real estate contract for the sale of certain real property located in Clackamas County. The trial court entered a decree dismissing plaintiff's suit to foreclose, and plaintiff appeals.

The primary issue on this appeal is whether the vendor's long-standing practice of accepting late payments precludes him from declaring the entire balance due and requesting strict foreclosure in accordance with the terms of the contract without first giving the purchaser reasonable notice of his decision to do so and a reasonable opportunity to cure any default in the payments.

The facts in this case are essentially undisputed. On June 30, 1971, plaintiff contracted to sell the pro- perty to the defendant for $25,000. The agreement provided for monthly payments of $250 payable on the first day of each month, beginning with the month of August, 1971. Subsequently, the agreement was modified to increase the amount of the payments to $275 to cover increased taxes. From the time of the execution of the contract until the suit was filed in June, 1975, the defendant was consistently late in making the monthly payments. In fact, the record discloses that the defendant would normally make double payments every other month instead of single monthly payments. Frequently, even the double payments were not made on time, and the defendant testified that at one point he was over three months behind before he again caught up. Even during this period, however, plaintiff apparently did not object to defendant's failure to make the payments in accordance with the terms of the contract.

Plaintiff testified that it was his practice to personally pick up the payments from the defendant at the defendant's place of business. Apparently, at least on some occasions, several trips were necessary. Defendant testified that plaintiff knew that the property

was rented and that the renter was having trouble paying the rent.

Plaintiff's testimony also indicates that his last personal contact with the defendant was late in April or early in May of 1975. At that time, the defendant was approximately two months behind; the last payment, a double payment, had been made on March 4, 1975. Plaintiff testified that during this visit the defendant stated that the "renter wasn't paying, so he couldn't pay." Plaintiff returned to defendant's office twice more in May, but the defendant wasn't in.

On June 1, 1975, plaintiff went to see his attorney "to see if we couldn't do something with the thing * * * I wanted to have some money." The complaint was filed the next day, on June 2, 1975. Shortly after this suit was instituted, defendant sent plaintiff a check for the entire amount which was due.

Plaintiff admits that he was not able to contact the defendant after late April or early May and that he never notified him of his decision to foreclose. During the approximately four-year period in which payments were made under the contract, defendant paid a total of $11,790 toward the purchase of the property.

■ The law in this state is well established that, even when a contract contains a time-essence clause, a vendor who, through a consistent practice of accepting late payments, has permitted the purchaser to rely on this course of conduct must give reasonable notice that he will thereafter insist on strict performance of the contract provisions. The vendor must also give the purchaser a reasonable opportunity to bring the payments up to date before he is entitled to strict foreclosure. *See, e.g., Stinemeyer v. Wesco Farms, Inc.,* 260 Or 109, 487 P2d 65 (1971). However, the contract herein contained not only a time-essence clause but also the following nonwaiver provision:

> "The buyer further agrees that failure by the seller at any time to require performance by the buyer of any

provisions hereof shall in no way affect his right hereunder to enforce the same, nor shall any waiver by said seller of any breach of any provisions hereof be held to be a waiver of any succeeding breach of any such provision, or as a waiver of the provision itself."

Essentially, plaintiff contends that this clause relieves him of the duty to give notice of his decision to strictly enforce the time provisions of the contract. However, in *Hall v. Work,* 223 Or 347, 354 P2d 837, 366 P2d 533 (1960), we held that a similar nonwaiver provision of the contract can itself be waived by the conduct of the vendor. This is in accord with the general view which has been expressed by Professor Corbin as follows:

"Effect of Express Provisions against Waiver or Variation

"Parties to a contract can not, even by an express provision in that contract, deprive themselves of the power to alter or vary or discharge it by subsequent agreement. An express provision in a written contract that no rescission or variation shall be valid unless it too is in writing is ineffective to invalidate a subsequent oral agreement to the contrary. In like manner, a provision that an express condition of a promise or promises in the contract can not be eliminated by waiver, or by conduct constituting an estoppel, is wholly ineffective. The promisor still has the power to waive the condition, or by his conduct to estop himself from insisting upon it, to the same extent that he would have had this power if there had been no such provision." 3A Corbin on Contracts 531, § 763 (rev. ed. 1960) (footnotes omitted).

*See also Searoad Shipping Co. v. E. I. duPont,* 361 F2d 833 (5th Cir), *cert. den.* 385 US 973 (1966); *Bettelheim v. Hagstrom Food Stores,* 113 CA2d 873, 249 P2d 301 (1952); *Bricker v. Great Western Accident Ass'n,* 161 Iowa 61, 140 NW 851 (1913); *Davis v. Payne and Day, Inc.,* 10 Utah 2d 53, 348 P2d 337 (1960); *Calhoun v. Universal Credit Co.,* 106 Utah 166, 146 P2d 284 (1944); *Central Ins. Co. of Baltimore v. EHR,* 18 Wash 2d 489, 139 P2d 701 (1943); *Beardslee v. North Pacific Finance Corp.,* 161 Wash 86, 296 P 155 (1931). *Cf. General Electric Co. v. National Contracting Co.,* 178

NY 369, 70 NE 928 (1904); *Boston Ins. Co. v. Barnes,* 120 Ga App 585, 171 SE2d 626 (1969).

In this case, we believe that the plaintiff's actions in accepting late payments consistently for almost four years, without ever notifying the defendant that in the future he was going to insist on payments strictly in accordance with the contract's terms, were sufficient to demonstrate a waiver of the time provisions of the contract despite the contract's language to the contrary. Therefore, before plaintiff was entitled to file this suit for foreclosure, he was obligated to give defendant reasonable notice of his intention to insist on strict compliance in the future and a reasonable opportunity to bring his payments up to date.

Plaintiff also argues that even if he waived the requirement of monthly payments, defendant was still required to make bimonthly payments in accordance with the course of performance established by the parties over the years. At the time of plaintiff's last contact with the defendant, the defendant was more than two months behind, and he told plaintiff that he couldn't pay because his renter wasn't paying. However, the record indicates that a similar problem had arisen once before and that plaintiff allowed the defendant to fall three months behind, apparently without objection. Under these circumstances, and in light of the prolonged pattern of prior acquiescence in late payments, we believe that plaintiff was required to give the defendant reasonable notice of his decision to foreclose, despite the fact that the defendant was an extra month behind at the time the decision was made. Moreover, since plaintiff had established a pattern of picking up each check in person from the defendant at defendant's place of business, and since approximately one month had passed since his last contact with the defendant, we feel that plaintiff's actions in initiating this proceeding were premature. We note that shortly after this suit was filed, defendant sent plaintiff a check for the entire balance then due.

■ The plaintiff also contends the trial court erred in allowing the defendant attorney fees. We agree. There was no testimony relating to attorney fees and no stipulation by the parties to support such an award. Therefore, there was no basis in the record for the allowance of attorney fees. *See Waggoner v. Oregon Auto. Ins. Co.,* 270 Or 93, 526 P2d 578 (1974); *State High. Com. et al v. Kendrick et al,* 227 Or 608, 363 P2d 1078 (1961).

Affirmed as modified and remanded to strike attorney fees from the decree. No costs to either party.