688 P.2d 676

**Joseph F. SANSON and John K. Skomp, Plaintiffs-Appellees,**

v.

**Bennie M. GONZALES and Lupe Gonzales, husband and wife; Jerry Tokoph, Jr., and Gudrun Carmen Tokoph, husband and wife; Jeri-Co Contracting, an Arizona corporation; Stewart Mazure and Rosemary Mazure, husband and wife, Defendants-Appellants.**

**No. 1 CA–CIV 6720.**

Court of Appeals of Arizona,
Division 1, Department D.

Jan. 19, 1984.

Murphy & Posner by K. Bellamy Brown, Richard H. Lee, Phoenix, for plaintiffs-appellees.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.C. by Donald E. Dyekman, Brian C. Bond, Phoenix, for defendants-appellants.

## OPINION

KLEINSCHMIDT, Judge.

Joseph Sanson conveyed, in December, 1979, an office building in Phoenix to Bennie and Lupe Gonzales. The buyers executed a promissory note and a deed of trust. The note specifies that installment payments must be made by the 15th of each month and that default will result in an acceleration of the debt. The deed of trust provides that upon default the loan may be accelerated, that if payment is not made the trustee may sell the property, and that upon such a sale the trustee shall apply the proceeds of the sale to payment of the sums secured by the deed of trust with the remainder, if any, to go to the person legally entitled thereto as provided in A.R.S. § 33–812. The deed of trust contains a nonwaiver provision which provides that an acceptance of late payments will not constitute a waiver of the right to declare a default for failure to pay.

About a month after acquiring the property the Gonzaleses conveyed it to the Tokophs and Mazures subject to the note and the deed of trust. The Tokophs and Mazures, who were to make the payments on the property to the original seller, failed to do so in timely fashion. On March 7, 1980, Sanson's attorney wrote the Gonzaleses stating that late payments would not be accepted. Sanson, nevertheless, continued to accept late payments. In October, 1980, he caused a notice of a trustee's sale to be served when payments for August and September, 1980, were not timely received. This sale was canceled in January, 1981, and thereafter the seller accepted six successive late payments. Finally, after receiving and accepting a total of 18 late payments and after allegedly giving notice of his intent to accelerate the loan if further late payments were received, Sanson accelerated payment of the note. The Gonzaleses, Tokophs and Mazures objected to the acceleration on the grounds that Sanson never notified them of his intent to enforce prompt payment on the note. They refused to pay the entire balance due on an accelerated basis. Sanson disputes that he did not give notice of his insistence that payments be timely and says that the appellants evaded his attempts to communicate with them. The trial court considered this dispute of fact to be immaterial and granted summary judgment to Sanson for the unpaid balance.

There are three issues for decision.

First: Whether acceptance of late payments constitutes a waiver of the right to accelerate without notice that future payments must be timely;

Second: If so, whether the nonwaiver clause is effective to permit acceleration without giving notice that late payments will not be accepted in the future; and

Third: Whether Sanson's commencement of an action to foreclose the deed of trust could have constituted a tort.

## EFFECT OF ACCEPTANCE OF LATE PAYMENTS

■ It is the general rule that an obligee who accepts late payments waives his right to accelerate the note and foreclose on his security without first clearly advising the obligor that he will, in the future, insist that payments be made on time. *Ashback v. Wenzel,* 141 Colo. 35, 346 P.2d 295 (1959); *Barday v. Steinbaugh,* 130 Colo. 10, 272 P.2d 657 (1954); *Smith v. Landy,* 402 So.2d 441 (Fla.App.1981); *Smith v. Gholstin,* 45 Ga.App. 287, 164 S.E. 217 (1932); *Edwards v. Smith,* 322 S.W.2d 770 (Mo.1959); *Salishan Hills, Inc. v. Krieger,* 62 Or.App. 84, 660 P.2d 160 (1983); *Lively v. Drake,* 629 S.W.2d 900 (Tenn.1982).

Arizona cases dealing with the right to declare a forfeiture under land sales contracts are in accord with the general rule. *Kammert Brothers Enterprises, Inc. v. Tanque Verde Plaza Co.,* 102 Ariz. 301, 428 P.2d 678 (1967); *Arizona Title Guarantee & Trust Co. v. Modern Homes,* 84 Ariz. 399, 330 P.2d 113 (1958); *Onekama Realty Co. v. Carothers,* 59 Ariz. 416, 129 P.2d 918 (1942); *Freedman v. Continental Service Corp.,* 127 Ariz. 540, 622 P.2d 487 (App.1980); *Eyman v. Sowa,* 23 Ariz.App. 588, 534 P.2d 1087 (1975); *Jahnke v. Palomar. Financial Corp.,* 22 Ariz.App. 369, 527 P.2d 771 (1974).

■ Division 2 of this court has, however, recently held that where acceleration and foreclosure are involved the obligee who has accepted late payments may accelerate without reinstating time is of the essence. *See First Federal Savings & Loan Ass'n v. Ram,* 135 Ariz. 178, 659 P.2d 1323 (1982). Division 2 was dealing with a mortgage while we are concerned with a deed of trust. We see no distinction between the two that would have ramifications for the issue before us. Division 2 concluded that the Arizona cases holding that once late payments are accepted there can be no *forfeiture* unless the obligor is

notified that future payments must be timely are inapposite to foreclosure actions. It based this conclusion on the distinction between contracts calling for forfeiture (on default the obligee takes back the property sold and keeps the amount already paid as liquidated damages) and contracts allowing acceleration (a declaration that all amounts still owing are immediately due). We certainly agree that an acceleration is not a forfeiture but we do not believe the inquiry can end there. The fact is that on many occasions acceleration of the obligation and foreclosure of a deed of trust will have much the same effect as an outright forfeiture. If the property is sold on foreclosure for less than is required to extinguish the underlying debt the obligor has lost his property and still owes the balance of the debt. Even where the property is sold for a sufficient amount to extinguish the debt or there is a surplus, the results of acceleration and foreclosure are often harsh. In any event the similarities between forfeiture and acceleration/foreclosure are close enough, the policy of the Arizona forfeiture cases clear enough, and the rationale of the authorities from other jurisdictions is sufficiently convincing to persuade us that the best and simplest rule is that once an obligee has repeatedly accepted late payments he must give clear notice of his intent to reinstate time is of the essence. We note in passing that a single acceptance of late payments will not constitute a waiver. *Tolmachoff v. Eshbaugh,* 41 Ariz. 318, 18 P.2d 256 (1933). We do not need to determine here how many accepted late payments it takes to constitute a waiver. Eighteen is enough.

■ A more difficult question is whether the need to reinstate time is of the essence should be predicated on a theory of implied waiver or, instead, upon a theory of estoppel. The cases discussing this issue are not consistent as to upon which of the two theories the need to reinstate time is of the essence is based. *Compare Barday v. Steinbaugh, supra,* with *Edwards v. Smith, supra,* and *see Tolmachoff v. Eshbaugh, supra,* and *see Arizona Appellate*

*Decisions—Installment Contracts for the Sale of Land: Waiver of Time of the Essence Clause,* 18 *Ariz.L.Rev.* 799 (1977). We adopt the rule that repeated acceptance of late payments constitutes a waiver as a matter of law. This rule is fair, consistent with the rule applied in the forfeiture cases, and will avoid litigation over whether the elements of estoppel have been met.

## NONWAIVER CLAUSE

 Sanson argues that even if he would normally be required to reinstate time is of the essence, the presence of a nonwaiver clause in the agreement relieves him of this duty. The clause reads:

> That time is of the essence of this Deed of Trust and that by accepting payment of any sum secured hereby after its due date, beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

To support his argument Sanson cites one Arizona case, *Cottonwood Plaza Associates v. Nordale,* 132 Ariz. 228, 644 P.2d 1314 (1982), and two cases from other jurisdictions, *Stephens v. State,* 501 P.2d 759 (Alaska 1972) and *Lundberg v. Switzer,* 146 Wash. 416, 263 P. 178 (1928). We accept his argument generally and at the same time recognize that there are some points of distinction in the authorities cited for it. The *Cottonwood Plaza* case is readily distinguishable because it relies heavily on the fact that the obligee had specifically given notice reinstating time is of the essence. The *Stephens* case appears to rely on *Lundberg v. Switzer, supra,* without much comment. While *Lundberg* is difficult to distinguish it has rarely been followed and a later Washington decision seems to have artfully emasculated *Lundberg* while seemingly leaving it intact. *See Beardslee v. North Pacific Finance Corp.,* 161 Wash. 86, 296 P. 155 (1931). We find nothing, however, to indicate that such clauses are against public policy or that they are a nullity for any reason.

 We are also aware that there are a number of decisions which hold that similar nonwaiver clauses in mortgages, leases, or conditional sales contracts can themselves be waived. *Dillingham Commercial Co. v. Spears,* 641 P.2d 1 (Alaska 1982); *Auto-Plaza v. Central Bank,* 394 So.2d 6 (Ala. 1980); *Gonsalves v. Gilbert,* 44 Hawaii 543, 356 P.2d 379 (1960); *Summa Corp. v. Richardson,* 93 Nev. 228, 564 P.2d 181 (1977); *Soltis v. Liles,* 275 Or. 537, 551 P.2d 1297 (1976); *Fisher v. Tiffin,* 275 Or. 437, 551 P.2d 1061 (1976); and *Hall v. Work,* 223 Or. 347, 354 P.2d 837 (1960). These cases generally do not go into detail as to precisely what is necessary to vitiate a nonwaiver clause. One of them however holds that the consistent acceptance of late payments over a period of four years is enough alone to waive the nonwaiver clause. *Fisher v. Tiffin, supra. See also Soltis v. Liles, supra.* We reject this view since it would render the nonwaiver clause a nullity.

 We think the better rule is that a party may be estopped to assert the nonwaiver clause. Such an estoppel requires more than the repeated acceptance of untimely payments which lull the obligor into the belief that he is safe in making payments late. It would require conduct on the part of the obligee that leads the obligor to believe that the nonwaiver clause will never be invoked or will not be invoked without prior notice. The elements of estoppel are discussed generally in *Joy Enterprises v. Reppel,* 112 Ariz. 42, 537 P.2d 591 (1975) and *Sailes v. Jones,* 17 Ariz.App. 593, 499 P.2d 721 (1972).

One case closely in point is *S.H.V.C., Inc. v. Roy,* 37 Conn.Sup. 579, 428 A.2d 806 (1981). There a lease contained a clause that conferred on the landlord the right to terminate the lease for nonpayment of the monthly rental. The lease also contained a nonwaiver provision. The landlord accepted many late payments but then sought to evict the tenant for untimely payment. In discussing the effect of a nonwaiver provision the Connecticut court said:

> The defendant presented no evidence of waiver other than acceptance of late rental payments in the past. We con-

clude that this evidence, to which the nonwaiver provision clearly applies, was insufficient as a matter of law to establish a waiver ....

The defendant does not claim that any evidence he might have offered upon the issue of estoppel was excluded by the trial court. The only evidence which was presented in support of this defense was the evidence claimed to support the defense of waiver, prior acquiescence in the receipt of delinquent payments. Since this evidence was insufficient to establish a waiver in the light of the nonwaiver clause of the lease, it was also inadequate to prove an estoppel. *An equitable estoppel arises only where one party has done something intended or calculated to induce another to believe in the existence of certain facts and to act on that belief ...* A reasonable reliance upon the misleading conduct, resulting in some detriment to the party claiming the estoppel, is also required.

428 A.2d at 809–10 (emphasis added) (citations omitted).

■ The Supreme Court of Connecticut affirmed that reasoning in its decision in the same case reported at 188 Conn. 503, 450 A.2d 351 (1982). The supreme court observed that the distinction between implied waiver and estoppel by conduct in this context is largely a matter of semantics. It rejected the rule espoused by the Oregon court in *Fisher v. Tiffin, supra,* that repeated acceptance of late payments alone will vitiate a nonwaiver clause. It did so based on a perceived distinction between the relatively less harsh termination of a lease and the harsher foreclosure of a mortgage. We do not accept that distinction because, depending upon the facts of each case, the termination of some leases could be a good deal harsher than the foreclosure of some mortgages. We nonetheless accept the rule of the Connecticut case.

Neither of the Connecticut courts suggested examples of how such an estoppel might occur. While it is difficult to foresee every circumstance that might bear on the issue, certainly one example would be a verbal promise or insinuation that the clause will not be invoked.

To recapitulate:

In the absence of a nonwaiver clause in a deed of trust repeated acceptance of late payments constitutes waiver of an obligee's right to insist on timely payment in the future unless notice of reinstatement of the time is of the essence clause is given to the obligor. This is a rule of law and the obligor need not establish the elements of estoppel.

■ In the presence of a nonwaiver clause in a deed of trust repeated acceptance of late payments and the obligor's reliance thereon will not, without more, require the obligee to reinstate the time is of the essence clause before declaring an acceleration and commencing foreclosure. The other element of estoppel—a calculated or grossly negligent act that induces the belief that the nonwaiver clause will not be given effect must be shown.

■ Here, all the appellants urged in support of their motion for summary judgment was that Sanson had repeatedly accepted late payments and that they were led into the belief that he would continue to do so. This was not sufficient to avoid the grant of summary judgment against them. In view of our conclusion it follows that Sanson was justified in commencing foreclosure so there is no need to consider the question of tort liability.

The judgment is affirmed.

GREER and JACOBSON, JJ., concur.