762 P.2d 566

**Delores M. DORN, and Elizabeth Britt, Plaintiffs–Appellants,**

v.

**Roger B. ROBINSON, and Lois D. Robinson, husband and wife, Defendants–Appellees.**

**No. 1 CA–CIV 9344.**

Court of Appeals of Arizona, Division 1, Department B.

March 29, 1988.

Reconsideration Denied May 24, 1988.

Review Denied Nov. 1, 1988.

Thomas P. Kack, Prescott, for plaintiffs-appellants.

Toci, Murphy and Beck by Thelton Beck, Prescott, for defendants-appellees.

## OPINION

GREER, Judge.

Appellants Delores M. Dorn and Elizabeth Britt appeal from summary judgment entered in favor of Appellees Roger B. and Lois D. Robinson. The judgment dismissed appellants' complaint for foreclosure of a deed of trust and awarded the Robinsons their attorney's fees under A.R.S. § 12–341.01(A). Appellants urge these issues for our review:

(1) whether the trial court erred in holding that appellants' acceptance of late payments constituted a waiver of the "time is of the essence" clause under a deed of trust containing a clear non-waiver statement;

(2) whether the trial court erred in failing to appoint a receiver; and

(3) whether this court should vacate the Robinsons' award of attorney's fees and award appellants their attorney's fees and costs incurred at trial and on appeal.

We have jurisdiction pursuant to A.R.S. § 12–2101(B).

Appellants owned a mobile home in Prescott and the lot on which it stood. In May 1984, they sold the mobile home and lot to Neal Zimmerman and Gladys Wagner, who are not parties to this appeal. In connection with the sale, Zimmerman and Wagner executed a promissory note in favor of appellants secured by a deed of trust on the property.

Zimmerman died shortly thereafter. On or about July 12, 1984, Wagner sold the mobile home and lot to appellees Robinson. The Robinsons took the property subject to the Zimmerman–Wagner promissory note and deed of trust.

The promissory note was in the principal amount of $33,500 and provided for regular monthly payments of $300 beginning on June 4, 1984. The promissory note provided:

This Note is secured by a Deed of Trust or Mortgage on real property.

Should default be made in the payment of principal and interest thereon, as above provided, or other default occur in the performance of or compliance with any of the covenants or conditions of said Deed of Trust or Mortgage, then in any such event the holder may, in addition to such other remedies or combination of remedies holder may have under law and equity, declare the whole sum of principal and interest immediately due and payable.

. . . .

Should suit be brought to recover this Note, I, we, or either of us, promise to pay a reasonable attorney's fee in addition to the amount found due on this Note.

The deed of trust provided:

7. That time is of the essence of this Deed of Trust and that by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

. . . .

11. That upon default by Trustor in the payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immedi-

ately due and payable by delivery to Trustee of written notice thereof, setting forth the nature thereof, and of election to cause to be sold said property under this Deed of Trust.

. . . .

Beneficiary may foreclose this Deed of Trust as a realty mortgage.

The trustee under the deed of trust was First American Title Insurance Company of Arizona.

After the Robinsons purchased the property, they commenced making payments on the promissory note through First American Title. Through December 1984, none of their payments were late by more than one week.

By January 16, 1985, First American Title had not received the Robinsons' January payment, due January 4, 1985. It sent the Robinsons a notice which stated, in part:

We have been requested to remind you that we did not receive your payment(s) on the above account. In order to protect your equity in the property involved please bring the account up to date immediately.

First American Title received the Robinsons' January payment on January 21, 1985.

By February 19, 1985, First American Title had not received the Robinsons' February payment. On that date, it sent the Robinsons another notice of the type it had issued the previous month. On March 2, 1985, appellant Delores Dorn sent the Robinsons a handwritten letter stating:

I would appreciated [sic] if you would get both payments, February and March sent in, so that the title company will receive the payments no later than the 8th of March. If the payments (both) aren't paid by then, you leave me no alternative but to start foreclosure proceedings.

If you get both payments in on time and you will have a problem in continuing to pay on time, please come and talk to me. Maybe we could change the payment date if that will help you to pay on time. Please let me hear from you.

On March 5, 1985, appellee Lois Robinson sent Dorn the following handwritten reply:

I am sorry we have gotten behind on the payments.

My father lives in Texas and is dying of cancer and I have had to make two trips home that I had not counted on.

Things look like we are seeing our way clear from now on if you can bear with us this month. I am sending one payment in today and the other payment will be in March 14, 84. [sic] The April payment will be on time. Again, I am sorry, but this is all I can do at this time.

Thank you for your patience and understanding as this will not happen again.

The Robinsons actually paid the February payment on March 11, 1985, and the March payment on April 1, 1985. The April and May payments were made together on May 9, 1985. They then paid the June payment on June 3, 1985, and the July payment on July 19, 1985. No further notices or letters were sent in connection with the March, April, May or July payments.

During the summer of 1985, the Robinsons were informed that Mrs. Robinson's father was seriously ill. According to the Robinsons' affidavits, Mrs. Robinson went to visit her father without making arrangements with her husband or anyone else to insure that the monthly payments on their Prescott property would be made on time.

By September 20, 1985, neither the August nor the September payments had been made. On that date, appellants initiated this action by filing a complaint for judicial foreclosure of the deed of trust. The complaint alleged:

Plaintiff [sic], in accordance with the terms of the Promissory Note, has elected and hereby does, unless acceleration has been accomplished prior to the filing of this Complaint, declare the whole of said unpaid principal balance, interest and other charges immediately due and payable.

In her deposition, Mrs. Robinson testified that Delores Dorn never told her in writing

or orally after June of 1985 that the Robinsons could miss payments and that, when she failed to make the August and September payments, it was not in reliance on any representation by Dorn. She also testified that she knew Dorn wanted the payments made on time and that her only reason for not making the August and September payments was because she was out of state. Mr. Robinson testified that there was no agreement between appellants and the Robinsons that allowed the Robinsons to miss further payments after the payments were brought up to date following the March letter. He further testified that he never had the impression that the Robinsons could miss several payments in a row and still not worry about foreclosure.

Near the end of September or the first of October, 1985, local realtor Ray Denny called the Robinsons and told them they were two months delinquent in their payments. On October 2, 1985, the Robinsons tendered two payments, or $600, to First American Title. On October 7, 1985, they tendered an additional $300 for the October payment. On October 11, 1985, the Robinsons were served with process in this action, and on October 18, 1985, First American Title returned all three payments to the Robinsons.

Ruling on cross-motions for summary judgment, the trial court concluded:

> It appears to the Court that the law in Arizona is at long last clear: After late payments have been accepted under a note and deed of trust, the obligee is bound to give notice reinstating time is of the essence provisions and allow time to cure prior to filing suit. *Ciavarelli, Ram* and *Miller v. Uhrick* are not inconsistent on this point.

> Because Plaintiffs did not give the notice required by law, IT IS ORDERED denying Plaintiffs' Motion for Summary Judgment and granting Defendants' Motion for Summary Judgment.

> IT IS FURTHER ORDERED denying Plaintiffs' request for order allowing possession or appointment of receiver.

The trial court later awarded the Robinsons $2,867.50 as attorney's fees pursuant to A.R.S. § 12–341.01(A). The trial court entered formal judgment in favor of the Robinsons on August 28, 1986, and later entered a formal order denying appellants' motion for new trial or hearing. Appellants timely appealed.

We begin with a review of the pertinent Arizona case law. In *Ciavarelli v. Zimmerman*, 122 Ariz. 143, 593 P.2d 697 (App. 1979), the debtor executed a new note and deed of trust to settle a pending trustee's sale on a prior note and deed of trust. Both the note and the deed of trust contained acceleration clauses, and the deed of trust included a "time is of the essence" clause. The debtor's third payment under the new note was due on October 5, 1977. On October 3, the debtor asked the lender's lawyer if he could pay only half of what was due on October 5, 1977. The next day, October 4, 1977, the lender's lawyer told him he could not. That same day, the debtor mailed a check for the full amount to the escrowee. On October 6, 1977, the lender's lawyer instructed the escrowee to return any late payments. The escrowee received the debtor's check that same day and returned it. The lender thereafter brought a foreclosure action, in which he prevailed on a motion for summary judgment. Division Two of this court affirmed, stating:

> The general rule is that an acceleration clause works neither a forfeiture nor a penalty. It is simply a matter of contract determining when the debt is payable, and consequently it is enforced in both law and equity. A mortgagor will not be relieved when it is enforced because of a default caused by his negligence, mistake or by accident, in the absence of fraud, bad faith, or other conduct on the part of the mortgagee which would make it unconscionable for him to avail himself of the clause.

> . . . .

> We do not believe that appellees' insistence that they be paid according to the terms of the note and deed of trust constitutes harsh, oppressive, or inequitable conduct. This is especially true in light of the fact that appellees had given ap-

pellants a "second chance" by executing a new note and deed of trust; also, appellants knew that appellees insisted that they be paid on the date the monthly payment was due and knew that the payment would not arrive there in time.

*Id.* at 144–45, 593 P.2d at 698–99.

The court of appeals next considered the appropriateness of acceleration and foreclosure in *First Federal Savings & Loan Ass'n of Phoenix v. Ram,* 135 Ariz. 178, 659 P.2d 1323 (App.1982). *See* Note, 25 Ariz.L.Rev. 780 (1983). In that case, Catalina Savings and First Federal were the senior and junior mortgagees respectively on the Rams' real property. Both Catalina and First Federal accepted numerous installment payments that were a few days late. At the same time, Catalina mailed five letters to the Rams about the late payments. One of the letters, the only one the Rams admitted receiving, referred to the reinstatement of the "time is of the essence" provision in an earlier letter. The Rams thereafter missed four monthly payments, and Catalina and First Federal filed a mortgage foreclosure action. Division Two of this court affirmed summary judgment for Catalina and First Federal, rejecting the view that their consistent acceptance of late payments constituted a waiver of the "time is of the essence" provision. The Rams had relied on the holding in *Onekama Realty v. Carothers,* 59 Ariz. 416, 129 P.2d 918 (1942):

> Where the vendor in a contract of purchase and sale has permitted the time for payment to pass, and has accepted further payments thereafter, that it constitutes a waiver of default and no forfeiture may be had for a subsequent failure unless and until the vendee is notified of the intention of the vendor to insist on strict performance, and is given reasonable opportunity to bring the payments up to date.

*Id.* at 423, 129 P.2d at 921. The court, however, distinguished *Onekama:*

> The appellants' reliance on Arizona forfeiture law is inapposite. By forfeiture, a purchaser loses all interest in the subject property. Since equity abhors a forfeiture ... the Arizona courts and legislature have deemed it only fair to require a vendor, after accepting late payments, to reassert a right to strict performance by notice. *See Onekama Realty Co., supra.*
>
> On the other hand, an acceleration clause, as in the present case, results in neither a forfeiture nor a penalty. *Ciavarelli v. Zimmerman,* 122 Ariz. 143, 593 P.2d 697 (App.1976). Such a clause is merely a contract term to determine when a debt is payable. *Ciavarelli, supra.*
>
> . . . .
>
> In the present case the appellants were in default due to a failure to meet payment deadlines under a time-is-of-the-essence provision. The trial court had sufficient evidence from which to conclude that the default resulted from their neglect. We find no evidence of fraud, bad faith, or unconscionable conduct by Catalina.

135 Ariz. at 180, 659 P.2d at 1325.

In *First Federal,* the Rams also argued that Catalina and First Federal were precluded by the principles of waiver and estoppel from foreclosing because they had lulled the Rams into a false sense of security by consistently accepting late payments. Division Two disagreed, stating:

> Regarding waiver in a mortgage foreclosure situation, the general rule is that the failure to foreclose on prior defaults in payment does not constitute a waiver of the right to foreclose due to subsequent defaults. G. Osborne, Handbook on the Law of Mortgages § 326, at 682 (2nd Ed.1970). This is also the law in Arizona. *See e.g., Ciavarelli, supra; Evans v. Scottsdale Plumbing Company,* 10 Ariz.App. 184, 457 P.2d 724 (1969); *Owen v. Mecham,* 9 Ariz.App. 529, 454 P.2d 577 (1969). The fact that earlier late payments are accepted does not waive a later right to foreclose, nor does it amount to fraud, bad faith or unconscionable behavior.
>
> We note that some jurisdictions preclude acceleration due to a default in payments made late in justifiable re-

liance on a continued course of conduct of accepting late payments. [Citations omitted.] Even if we found this authority persuasive, we would not find the appellants' reliance to be justified on the facts in the present case.

135 Ariz. at 181, 659 P.2d at 1326.

The court of appeals, Division One, briefly diverged from *First Federal* in *Sanson v. Gonzales*, 142 Ariz. 30, 688 P.2d 676 (App.1984), *vacated mem.*, 141 Ariz. 633, 688 P.2d 641 (1984). In that opinion, we expressed the following views:

[T]he similarities between forfeiture and acceleration/foreclosure are close enough, the policy of the Arizona forfeiture cases is clear enough, and the rationale of the authorities from other jurisdictions is sufficiently convincing to persuade us that the best and simplest rule is that once an obligee has repeatedly accepted late payments he must give clear notice of his intent to reinstate time is of the essence. We note in passing that a single acceptance of late payments will not constitute a waiver. *Tolmachoff v. Eshbaugh*, 41 Ariz. 318, 18 P.2d 256 (1933).

. . . .

We adopt the rule that repeated acceptance of late payments constitutes a waiver as a matter of law. This rule is fair, consistent with the rule applied in forfeiture cases, and will avoid litigation over whether the elements of estoppel have been met.

142 Ariz. at 33, 34, 688 P.2d at 679–80. In regards to the nonwaiver clause, we stated:

[A] party may be estopped to assert the nonwaiver clause. Such an estoppel requires more than the repeated acceptance of untimely payments which lull the obligor into the belief that he is safe in making payments late. It would require conduct on the part of the obligee that leads the obligor to believe that the nonwaiver clause will never be invoked or will not be invoked without prior notice.

*Id.* at 34, 688 P.2d at 680.

In *Sanson v. Gonzales*, 141 Ariz. 633, 688 P.2d 641 (1984), our supreme court dismissed the petition for review and vacated this court's opinion because the parties had reached a settlement agreement. In doing so it noted:

We granted the petition for review in the case at bench because, *inter alia*, of our disagreement with certain conclusions reached by the court of appeals and a conflict between the opinion of the court of appeals ... and that of Division 2 of the same court in the case of *First Federal Savings & Loan Ass'n v. Ram*, 135 Ariz. 178, 659 P.2d 1323 (App.1982).

*Id.* at 634, 688 P.2d at 642.

The most recent Arizona decision on this topic is Division Two's opinion in *Miller v. Uhrick*, 146 Ariz. 413, 706 P.2d 739 (App. 1985), *approved*, 146 Ariz. 511, 707 P.2d 309 (1985). In that case, Miller bought real property from Uhrick for $46,000, paying $33,500 in cash and giving Uhrick a deed of trust to secure the remainder. The balance was to be paid in monthly installments on the first of each month beginning January 1, 1981. The deed of trust contained a "time is of the essence" and an acceleration clause. It also provided that acceptance of late payments would not operate as a prospective waiver of the "time is of the essence" clause. Miller's January and February 1981 installments were each tendered and accepted two weeks late. Miller also tendered his March 1981 installment late; however, even though Uhrick had never before informed Miller that she was dissatisfied with his payments, Uhrick returned it to him and caused a notice of sale under the deed of trust to be issued. Miller offered to pay a month in advance to avoid any further late payments, but Uhrick refused to agree unless Miller reimbursed her for $121 she had incurred in connection with the notice of sale. Miller refused and brought an action to enjoin the sale.

The trial court entered judgment for Uhrick. On appeal, Division Two of the court of appeals reversed and remanded for entry of judgment in favor of Miller. Noting that the supreme court had by that time vacated *Sanson*, the court reasoned:

Miller points to authority that acceptance of late payments is a waiver and that forfeiture cannot occur without ac-

tual notice to him of an intention to insist on strict performance. See, e.g., *Arizona Title Guarantee & Trust Co. v. Modern Homes, Inc.*, 84 Ariz. 399, 330 P.2d 113 (1958). Uhrick contends that authority does not apply to remedies other than forfeiture and that in any event acceptance of two late payments is not a waiver. We believe these arguments to be too aridly formalistic on the facts of this case.

It is undisputed that Uhrick did not complain to Miller about the late payments though she easily could have done so. It is also clear, given Miller's behavior in paying two weeks in advance after notice of the proposed sale, that such a complaint would have been effective to achieve the desired result. The question then is whether the dramatic remedy of sale provided in the deed of trust can be invoked without any notice to the person allegedly in default. We hold in this instance that it cannot. We take notice that payments are often delayed by two to three weeks and that most creditors are not upset in such circumstances. See 3A A. Corbin, Contracts § 716 at 367 (2d ed. 1960) ("Delays are frequent in these transactions; and it is the custom of men to overlook them, even though they may have stated in advance they would not."). If a contract term is to be insisted upon, notwithstanding a commercial practice to the contrary, some notice more pointed than contract boilerplate must be given. See generally *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 682 P.2d 388 (1984). It was not in this case and, accordingly, Uhrick cannot prevail. We do not believe this result to be inconsistent with our holding in *First Federal Savings and Loan Association v. Ram*, 135 Ariz. 178, 659 P.2d 1323 (App.1982). There, we held that a formal notice of reinstatement of the time is of the essence clause was unnecessary where the remedy of acceleration was invoked after a history of late payment and nonpayment, despite letters of objection from the mortgagee. Those facts are not remotely similar to the facts in the present case.

146 Ariz. at 414–15, 706 P.2d at 740–41.

After granting review in *Miller*, our supreme court issued a brief memorandum opinion, stating as follows:

We granted review in this case to resolve an issue which evaded our review in *Sanson v. Gonzales*, 141 Ariz. 633, 688 P.2d 641 (1984). The issue is presented again in this case: What is the effect of a clause which provides for nonwaiver of time is of the essence provision in a deed of trust when the holder accepts late payments?

The resolution of the above issue by Division II of the Court of Appeals in this case is consistent with the views of this court, and we, therefore, approve the decision, *Clayton K. Miller III v. Susan Uhrick*, 146 Ariz. 413, 706 P.2d 739 (App. 1985).

146 Ariz. at 511, 707 P.2d at 309.

In the instant case, the trial court and the Robinsons have interpreted the opinions of Division Two and the supreme court in *Miller v. Uhrick* as adopting the view that after an obligee under a note and mortgage or deed of trust has accepted late payments, he may not accelerate and sue to foreclose unless he first gives the obligor notice reinstating the "time is of the essence" provision and then allows him time to cure. We cannot agree. In our opinion, that interpretation reads *Miller* far too broadly and, in addition, is inconsistent with the supreme court's memorandum opinion vacating *Sanson v. Gonzales*, 141 Ariz. at 633, 688 P.2d at 641.

A close reading of *Miller* reveals that the court closely developed its legal analysis from the particular facts before it. Crucial to a correct interpretation of *Miller* is the fact that in that case, the debtor's entire payment history consisted of having made two monthly payments that were each two weeks late. When the debtor apparently attempted to repeat this practice in the third month, the lender rejected his late payment and caused a notice of sale to be issued, all without ever having told the debtor she was dissatisfied with the two

prior late payments. It was in that context that Division Two took judicial notice that payments are often delayed by two to three weeks without disturbance to most creditors. It was also in that context that the court held:

> If a contract term is to be insisted upon, *notwithstanding a commerical practice to the contrary,* some notice more pointed than contract boilerplate must be given.

146 Ariz. at 414, 706 P.2d at 740 (emphasis added). In *Miller,* the default on which Uhrick sought to exercise the power of sale under the deed of trust without any advance warning was no more serious than accepted commercial practice would allow and no different from the two earlier late payments to which Uhrick acquiesced without protest. It was that kind of practice which the *Miller* court refused to permit. Contrary to the trial court's holding and the Robinsons' position on appeal, the *Miller* court did not hold that a lender's acceptance of late payments always requires him to issue a notice reinstating the "time is of the essence" clause before he may resort to acceleration and foreclosure because of future untimely performance. The court held only that a lender must notify his debtor that he will insist on strict compliance with a contract term and that he may not rely to that end on contract boilerplate alone before he pursues his contractual remedies based on a default that is no more serious than those sanctioned by commercial practice or the parties' own prior conduct.

The *Miller* court's specific recognition of the continued vitality of *First Federal* forecloses any broader interpretation of the *Miller* holding. The language by which *Miller* distinguished *First Federal* makes it clear that, although a lender has acquiesced in his debtor's prior default, he need not thereafter notify the debtor that he will insist on strict compliance in order to preserve the remedy of acceleration in the event of a breach more egregious than those sanctioned by commercial practice or the parties' prior conduct.

■ In summary, we conclude that a lender in this situation may not accelerate a debt and foreclose when a late payment is made within commercially acceptable limits or consistent with the parties' prior conduct *unless* some notice is given indicating that strict compliance with contract terms will be insisted on in the future. Conversely, if a payment is made beyond commercially acceptable limits and beyond the parties' prior conduct, a debt may be accelerated and foreclosed upon without any additional notice.

■ In our opinion, *Miller* and *First Federal* mandate judgment for appellants under the facts of this case. Given appellants' repeated and reasonably consistent acceptance of payments that were, on the average, one or two weeks late over the period from January through July of 1983, *Miller* might well have precluded appellants from basing an acceleration and foreclosure upon an additional one- or two-week payment delinquency unless they first gave the Robinsons "some notice" beyond the contract boilerplate that they would thenceforth insist on strict timeliness contrary to their prior practice. By the time appellants finally filed their foreclosure complaint, however, the Robinsons had missed two consecutive payments without explanation or communication and were almost two months late with their August payment. This was well beyond the commercial practice judicially noted in *Miller,* and well outside the scope of appellants' and the Robinsons' prior practice. Therefore, contrary to the Robinsons' argument, *Miller* did not require appellants to give the Robinsons any additional notice or opportunity to cure before accelerating and proceeding to foreclose. Instead, as in *First Federal,* where the debtor's late payment history expanded from a few days at the start to four consecutive months at the end, no formal notice of reinstatement of the time is of the essence clause was necessary here.

■ We next address the Robinsons' contention that there exists a genuine issue of fact material to the affirmative defense of estoppel raised in the Robinsons' answer. We cannot agree. There is no com-

petent evidence that the Robinsons missed their August and September payments because they relied on any statements or conduct of appellants. Indeed, their deposition testimony was exactly to the contrary. Further, even if they had actually relied on appellants' prior acceptance of payments that were one to two weeks late on the average, such reliance could not have justified their completely missing two consecutive monthly payments.

 We also reject the Robinsons' argument that appellants waived their request for the appointment of a receiver by failing to push the matter to a decision in the trial court. Appellants requested the appointment of a receiver in their complaint and later renewed that request on two separate occasions. By the minute entry of May 9, 1986, the trial court set a hearing on these requests for May 19, 1986. In a subsequent minute entry, the trial court vacated the May 19 hearing date and set all pending motions to be heard with the parties' cross-motions for summary judgment on June 23, 1986. By minute entry of June 23, 1986, the trial court took the parties' cross-motions for summary judgment under advisement and further ruled:

> The Court finds that Plaintiffs' Request for an Order Allowing Possession or Appointment of a Receiver is not ripe for adjudication at this time. After the Court rules on the Cross–Motions for Summary Judgment then, if necessary, the Court will set a hearing on the Request for Receiver.

Then, by minute entry of June 25, 1986, the trial court granted summary judgment for the Robinsons and consequently denied appellants' request for appointment of a receiver. In our opinion, and under the attendant circumstances, we conclude that appellants' request for a receiver has not been waived. Accordingly, the merits of appellants' various requests therefor must be considered on remand.

Finally, appellants request an award of attorneys' fees incurred in the trial court and on appeal. Appellants are entitled to an award of attorney's fees under the promissory note and deed of trust. We

grant the request. Necessarily, we reverse the trial court's award of attorney's fees to the appellees. Appellants may establish the amount of their award for attorney's fees incurred on appeal by complying with Rule 21(c), Ariz.R.Civ.App.P. The amount of appellants' award of attorney's fees incurred below shall be determined by the trial court on remand.

Reversed and remanded for proceedings consistent with this opinion.

CONTRERAS, P.J., and FEDEL, J., concurs.