**GAMETECH INTERNATIONAL, INC., a Delaware Corporation, Plaintiff,**

v.

**TREND GAMING SYSTEMS., L.L.C, a Texas limited liability company, Defendant.**

**Trend Gaming Systems, L.L.C, a Texas limited liability company, Counterclaimant,**

v.

**Gametech International, Inc., a Delaware Corporation, Counterdefendant.**

**No. CV–01–0540–PHX–LOA.**

United States District Court, D. Arizona.

Aug. 4, 2005.

Edward Jeffrey Walsh, Jennifer Meredith Dubay, Greenberg Traurig LLP, Phoenix, AZ, for Plaintiff and Counter–Defendant.

Richard E. Chambliss, Wesley ˙S. Loy, Broening Oberg Woods & Wilson PC, Phoenix, AZ, for Defendant and Counter–Claimant.

### ORDER

ANDERSON, United States Magistrate Judge.

This matter arises on the original and Supplemental Applications of Trend Gaming Systems, L.L.C. ("Trend") for an Award of Attorneys' Fees, Related Non–Taxable Expenses and Taxable Costs. (documents ## 428 and 503, respectively) Gametech has responded to both applications and has requested oral argument. (document # 514) Trend filed a Reply in Support of its Supplemental Application for an Award of Attorneys' Fees, Related Non–Taxable Expenses, and Taxable Costs (document # 524). Thereafter, Gametech sought leave to file a Sur–Reply which the Court granted. (documents # 529, # 530, # 534). Trend filed a Response ˙to Gametech's Sur–Reply. (document # 535) In addition, Gametech has filed a Motion to Strike Paragraph Four of the Supplemental Affidavit of Richard Chambliss (document # 513) and a Motion to Strike Affidavit of Michael Stark (document # 528). Trend filed responses to both motions (documents # 523, # 531) to which Gametech has replied. (documents # 527, # 538)

As stated above, Gametech requests oral argument. Trend, on the other hand, contends that oral argument is unnecessary. The Court has reviewed the relevant pleadings [1] in this matter and concludes

---

**1.** In support of its Application, Trend has filed the following documents: (1) Affidavit of Richard Chambliss in Support of Trend's Application for Attorneys' Fees (document # 429, filed December 1, 2004); (2) Trend's Itemization of Legal Services (document # 431, filed December 2, 2004); (3) Supplemental Affidavit of Richard E. Chambliss in Support of Trend's Application for Attorneys' Fees (document # 503, Exh. 1); (4) Second Supplemental Affidavit of Richard E. Cham-

that oral argument is not necessary. *Domegan v. Fair*, 859 F.2d 1059, 1065 (1st Cir.1988); *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 411 (1st Cir.1985)(discussing trial court's "wide latitude" on setting oral argument.). The Court, therefore, will resolve Trend's Applications for Attorneys' Fees and the related motions solely on the pleadings and the file as a whole without oral argument.

## BACKGROUND

### I. Procedural History

This matter arises from breaches of a written Distribution Agreement between Gametech and Trend which provides that the prevailing party is entitled to recover attorneys' fees, costs, and expenses. Specifically, the Distribution Agreement [2] provides:

> **8.9 Attorneys' Fees.** The prevailing party in any legal action brought by one party against the other and arising out of this Agreement shall be entitled, in addition to any other rights and remedies it may have, to reimbursement for its expenses, including court costs and reasonable attorneys' fees.

This litigation commenced on March 22, 2001 when Gametech filed a Complaint seeking a declaration that Gametech had not breached certain provisions of the Distribution Agreement and that Trend had breached the Distribution Agreement.

On July 30, 2001, Trend filed an Answer and Counterclaim seeking declaratory relief that Trend had not breached the Distribution Agreement (Count I) and

seeking damages on the ground that: (1) Gametech had breached the Distribution Agreement by entering into distribution agreements with other distributors which were more favorable (provided higher commissions) than Trend's Distribution Agreement (Count V), (2) Gametech had breached the Distribution Agreement by not providing adequate service to Trend's customers (Count V), (3) Gametech had breached the Distribution Agreement by failing to provide Trend the first right of refusal for new products (Count V), and (4) Gametech had breached the Distribution Agreement by interfering with Trend's contractual relationships with its customers (Count VI).

On July 22, 2002, Gametech advised Trend in writing that it had breached the Distribution Agreement by entering into contracts which did not provide Gametech with "its required minimum rate of return" and by entering into "generic" contracts with certain charities. Gametech warned Trend that if it did not cure those breaches on or before August 21, 2002, Gametech would terminate the Distribution Agreement.

Shortly thereafter on August 9, 2002, Trend applied for a temporary restraining order ("TRO") requesting that the Court restrain Gametech from (i) removing the equipment at certain charities, or (ii) terminating the parties' distribution agreement. On August 22, 2002 Trend filed a Motion for Preliminary Injunction seeking similar relief.

---

bliss in Support of Trend's Application for Attorneys' Fees (document # 525).

In support of its opposition to Trend's Application, Gametech has filed the following documents:(1) Affidavit of E. Jeffrey Walsh in Support of Gametech's Response to Trend's Original Application for An Award of Attorneys' Fees, Related Non–Taxable Expenses, and Taxable Costs (document # 516, filed June 6, 2005); (2) Affidavit of Daniel W. Glas-

ser in Support of Gametech's Response to Trend's Original and Supplemental Application for an Award of Attorneys' Fees, Related Non–Taxable Expenses, and Non–Taxable Costs (document # 515, filed June 6, 2005).

2. The November 1, 1999 Distribution Agreement was admitted in evidence as Trial Exhibit No. 1.

On August 26 and 27, 2002, the Court conducted an evidentiary hearing on the motions for TRO and preliminary injunction. (document # 61) The Court denied both motions. Following the Court's ruling, Gametech terminated the Distribution Agreement. On August 30, 2002 and September 12, 2002, the parties amended their claims and counterclaims to reflect additional claims and damages allegedly resulting from the termination of the Distribution Agreement.

Before trial, the Court granted summary judgment for Trend on the generic contract claim, and for Gametech on Trend's consumer fraud claim. Also before trial, Gametech withdrew its claims for unauthorized discounts, failure to promote the installation of products, and defamation.

When this matter proceeded to trial, Gametech's claims fell into the following general categories: (i) Trend's failure to pay monies owed to Gametech; (ii) Trend's use of unauthorized pricing formulas; (iii) Trend's conversion of Gametech property; (iv) Trend's unjust enrichment; and (v) Trend's violation of the covenant of good faith and fair dealing. Trend counterclaimed that Gametech (i) improperly terminated the Distribution Agreement; (ii) failed to service the equipment; (iii) interfered with Trend's contractual relationships with its customers; (iv) failed to grant Trend product exclusivity; and (v) failed to grant Trend a higher commission rate. The Court granted a directed verdict to Gametech on Trend's promissory estoppel claim and claim regarding higher commissions paid to other Texas distributors asserted in Trend's First Amended Counterclaim, but the jury found in favor of Trend on all other claims.

Specifically, on November 1, 2004, the jury found that: (1) Gametech breached the November 1, 1999 Distribution Agreement when it terminated the agreement over a pricing dispute and that Trend is entitled to compensatory damages in the amount of $3,526,765.46. (2) Following Gametech's termination of the Agreement on August 27, 2002, Trend did not pay $735,648.09 to Gametech from funds Trend collected after August 27, 2002.[3] From the compensatory damages Gametech owes Trend, Gametech is entitled to an offset in the amount of $735,648.09. (3) Gametech breached the Distribution Agreement by failing to provide Trend the first right to negotiate for the exclusive distribution of Diamond TED, Diamond Too, and TED2C on terms and conditions no less favorable than those accepted by other distributors. Trend is entitled to nominal damages for this breach in the amount of $1.00. (4) Gametech breached the Distribution Agreement by failing to provide commercially reasonable support and service to Trend's customers. Trend is entitled to nominal damages in the amount of $1.00 for this breach. (5) Gametech intentionally interfered with Trend's business relationship with East Plano Bingo. Trend is entitled to nominal damages in the amount of $1.00 for this breach. (6) Trend did not convert money that was property of Gametech. (7) Trend was not unjustly enriched by not paying Gametech from funds Trend collected from bingo collectors (charities) after August 27, 2002. (document # 506)

In its application for attorneys' fees, Trend claims that it "prevailed on every claim and defense, including the claims asserted in the original Complaint filed

---

**3.** Contrary to Gametech's assertion, jury interrogatory number 3 reflects that the jury found that the amount of money that Trend did not pay Gametech from funds Trend collected from charities after 8/27/2002 was $735,648.09 (document # 391), not that the jury awarded Gametech $735,648.09 based on Trend's withholding of those monies.

March 22, 2001 and the Counterclaim filed on July 30, 2001." (document # 428 at 4–5) While Gametech concedes that Trend was the prevailing party, it argues that Trend had only limited success on its claims because it was only awarded nominal damages on "three of the four purported breaches and consequently recovered $2,791,117.37 after offset of Gametech's $735,648.09." (document # 514 at 13)

This matter is before the Court on diversity and magistrate judge jurisdiction pursuant to express consent of all parties. Both parties agree that Arizona law governs the resolution of the attorneys' fees issue. *Mangold v. California Public Utilities Comm'n.*, 67 F.3d 1470, 1478–79 (9th Cir.1995)(stating that state law controls the method of calculating attorneys' fees awarded under state law in diversity jurisdiction.).

## II.  Terms of Distribution Agreement

▆▆▆  Because the parties' Distribution Agreement governs their relationship, the Court will first look to that Agreement as a basis for awarding Trend its attorneys' fees and costs. As previously stated, Article 8.9 of the Distribution Agreement entitles the *prevailing party* in any dispute "arising out of th[e] Agreement, in addition to any other rights and remedies it may have, to reimbursement for its expenses, including court costs and reasonable attorneys' fees." As the prevailing party, Trend is entitled to recover its reasonable attorneys' fees from Gametech. *Dorn v. Robinson*, 158 Ariz. 279, 762 P.2d 566, 574 (1998)(stating that successful litigant was entitled to an award of attorneys' fees where they were provided for by contract.). An attorneys' fees provision contained in a contract controls to the exclusion of the Arizona Revised Statutes ("A.R.S.") governing attorneys' fees. *Sweis v. Chatwin*, 120 Ariz. 249, 252, 585 P.2d 269, 272 (1978); A.R.S. § 12–341.01. Although the Distribution Agreement

awards attorneys' fees to the prevailing party, it does not define that term. Under Arizona law, the trial court has the discretion to determine the prevailing party for purposes of awarding costs under A.R.S. § 12–341. In Arizona, "determining the 'prevailing party' for purposes of awarding fees and costs is quite simple. Plaintiff sues defendant for money damages; if plaintiff is awarded a judgment, plaintiff has prevailed, and if defendant successfully defends and avoids an adverse judgment, defendant has prevailed." *McEvoy v. Aeroteck, Inc.*, 201 Ariz. 300, 302, 34 P.3d 979, 981 (2001). Here, the parties do not dispute that Trend is the prevailing party and is entitled to recover reasonable fees under the Distribution Agreement. Although the parties do not dispute Trend's status as the prevailing party, they dispute the reasonableness of the fees Trend seeks to recover.

## III.  Fees Requested and Issues Presented

In its original Application, Trend requests an award of $810,396.71 in attorneys' fees for work performed through November 30, 2004. (document # 428, Chambliss Aff. at ¶ 13) Trend also requests $26,769.66 in taxable costs, and $28,501.62 in non-taxable expenses. (document # 428) The attorneys' fees were based upon a billing rate of $200 per hour for Richard Chambliss and Wesley Loy for work between January 2001 and September 2003 and a later blended rate of $165 per shareholder per hour and an 8% contingency based on a September 2003 revision of the fee agreement between Trend and its counsel. (document # 428 at 7–8)

In its May 2005 Supplemental Application, Trend increases its demand for attorneys' fees to $1,386,630.15 based on an hourly shareholder rate of $165 and a 22% contingency pursuant to a post-verdict re-

vision of the fee agreement between Trend and counsel. (document # 503, Chambliss Supp. Aff. at ¶ 10) Trend claims that there is no prohibition to modifying the fee agreement to address a change in circumstances. Trend, however, does not cite any case law supporting its contention that a fee agreement may be changed after judgment has been entered and the unsuccessful party is responsible for paying the fees per the amended fee agreement.

Between the filing of the original and Supplemental fee applications, Trend's counsel performed 524 hours of work. Gametech argues that the value of that work was $82,769 under Trend's September 1, 2003 modified hourly fee agreement ("September 2003 Agreement") with counsel, in which counsel agreed to reduce its shareholder/partner hourly rate from $200, as set forth in a February 5, 2001 agreement, to $165 in exchange for an 8% contingency fee on any forthcoming recovery. (document # 428, Chambliss Aff. at ¶ 12; document # 503, Chambliss Aff. at ¶ 10) Gametech contends that Trend should not be permitted to modify its fee agreement with counsel after the verdict and then place the burden of paying the increased attorneys' fees on Gametech.

In support of its increased fee demand, counsel for Trend claims that even after they reduced counsels' hourly rate in 2003, Trend was still unable to pay counsel. (document # 503 at 4) Counsel for Trend claims that Trend anticipated that it would prevail at trial and that certain funds totaling $600,000, which were being held in a restricted constructive trust account, would be released to Trend. After hearing arguments of counsel on March 30, 2005, however, the Court held that the restricted constructive trust account would be maintained pending post-trial proceedings and appeals. (document # 483) Several months later, in May of 2005, Trend and its counsel entered into a new fee agreement (the "May 2005 Agreement") which replaced the September 2003 Agreement. Under the May 2005 Agreement, in addition to counsel's reduced hourly rate of $165, counsel is entitled to a 22% contingent fee on any recovery. (document # 503) Trend asserts that the new arrangement was necessary because the Court did not release to Trend funds currently held in constructive trust and because Trend needs funds to cover the appeals. (document # 503 at 4) Trend also asserts that the fees are reasonable because attorney Michael Stark with Lucia Stark & Williamson, LLP, a Phoenix law firm, attests that he has accepted commercial matters at a reduced hourly rate with a 20% contingency fee. (document # 503 at 4, Chambliss Supp. Aff. at ¶ 4) Mr. Stark's statements are the subject of two motions to strike which the Court will discuss hereinafter.

Although Trend primarily seeks to recover attorneys' fees based on its May 2005 fee agreement with counsel, in the alternative, Trend argues that its fee demand is reasonable because it is consistent with a lodestar analysis based upon a higher billing rate adjusted upward by 25 %. (document # 503 at 5) Gametech asserts that a lodestar approach does not apply in this commercial litigation between fee-paying clients. Gametech further argues that even if a lodestar approach is applied, Trend fails to establish that the challenges presented or the results achieved were "exceptional" enough to overcome the presumption that the lodestar itself would be the reasonable fee.

In summary, Trend requests a fee award of either $1.386 million based on its May 2005 fee agreement with counsel or $1.407 million based on a lodestar analysis with an upward adjustment. (document # 503) Gametech asserts that any attorneys' fee award should be based on the

terms of the February 2001 and September 2003 Fee agreements and the hours reasonably claimed by Trend's counsel. (document # 514) Gametech asserts that a lodestar analysis does not apply in this matter and that Trend seeks to recover attorneys' fees for an unreasonable number of hours of attorney time. The Court will address these issues below after addressing Gametech's motions to strike.

## MOTIONS TO STRIKE

### I. Motion to Strike Paragraph Four of Supplemental Affidavit of Richard Chambliss

Gametech moves to strike Paragraph Four of Mr. Chambliss' Supplemental Affidavit (document # 503, Exh 1) which describes Mr. Chambliss' discussion of the "matter of contingent fee agreement[s] in commercial disputes with Michael Stark ..., a principal in the firm of Lucia Stark & Williamson, LLP." (*Id.* at ¶ 4) Paragraph Four states that "Mr. Stark advised that his firm does enter into contingent fee agreements on commercial matters and the customary contingent fee is forty percent through trial with an additional five or ten percent if the law firm agreed to defend or prosecute on appeal." *Id.* Paragraph Four further states that Mr. Stark's firm "also accepts modified contingent fee cases in commercial disputes pursuant to which the clients pay[ ] a reduce[d] hourly rate and a twenty-two percent contingent fee through trial with an additional contingent fee if the law firm agreed to prosecute or defend on appeal." *Id.* Trend provided this information to the Court to support its request that attorneys' fees be calculated based on a May 2005 modification to the fee agreement which provides for an hourly rate of $165 and a contingent fee of 22%. (document # 503 at 4) The modification to the fee agreement was made after the verdict was entered and after

Trend submitted its original Application for Attorneys' Fees (document # 428).

Gametech moves to strike paragraph four of Mr. Chambliss' Supplemental Affidavit on the ground that it contains hearsay statements. Rule 801 of the Federal Rules of Evidence prohibits the admission of out-of-court statements offered for the truth of the matter asserted. Gametech asserts that Mr. Chambliss' affidavit contains a series of out-of-court statements that were made to him during an interview with Michael Stark offered for the truth of the matters asserted. (document # 513) Gametech contends that Mr. Stark has not attested by affidavit or otherwise to the billing matters which Mr. Chambliss seeks to submit to the Court. (document # 513)

In response to the Motion to Strike, Trend asserts that Gametech did not attack the substance of paragraph 4 of the Supplemental Chambliss Affidavit but rather challenged Trend's failure to submit an affidavit of Mr. Stark. To avoid a further dispute regarding paragraph 4, Trend submitted an affidavit from Michael Stark consistent with the matters set forth in paragraph 4 of the Supplemental Chambliss Affidavit. (document # 523, Stark Affidavit, June 24, 2005)

Because Gametech objected to paragraph four of the Chambliss' Affidavit on the ground that Mr. Stark had not attested to the billing matters and because Mr. Stark has now submitted such an affidavit, the Court will deny Gametech's Motion to Strike Paragraph Four of the Supplemental Chambliss Affidavit. (document # 513)

### II. Motion to Strike Affidavit of Michael Stark

After Trend filed the Affidavit of Michael Stark, Gametech filed a Motion to Strike that Affidavit. (document # 528) Gametech contends that the rules of procedure do not permit a fee applicant to file a

supporting affidavit after a respondent has filed a response. Gametech cites Fed. R.Civ.P. 6(d) which provides that where a "motion is supported by affidavit, the affidavit shall be served with the motion." *Id.* Similarly, LRCiv 54.2(d)(5) requires a fee applicant to file "[a]ny other affidavits or evidentiary matter deemed appropriate under the circumstances or required by law" with the memorandum supporting the fee application. *Id.* Gametech claims that if a movant is permitted to proffer new evidence after the respondent has filed its opposition papers, the respondent cannot address the evidence and that Fed. R.Civ.P. 6 and LRCiv 54.2(d)(5) are intended to address that problem.

██ Usually a movant should not be permitted to submit an affidavit or other evidence after the response has been filed because such a late submission would preclude respondent from addressing the evidence. That rationale does not apply here. Gametech has had ample opportunity to address the information contained in the Stark Affidavit. Indeed, the Court has permitted Gametech to file a Sur–Reply to address new evidence in Trend's Reply.

The Court declines to strike the Stark Affidavit finding that Gametech has had sufficient opportunity to address the matters raised in the Stark Affidavit. Moreover, as discussed below, the Court does not rely on the Stark Affidavit or the reference to Mr. Stark's statements in paragraph four of the Chambliss Affidavit in resolving the issues related to Trend's Original and Supplemental Fee Applications.

### *ANALYSIS*

██ The parties agree that as the prevailing party, Trend is entitled to recover its attorneys' fees provided Trend demonstrates sufficient proof exists to determine what is a reasonable fee. *Crouch v. Pixler,* 83 Ariz. 310, 315, 320 P.2d 943, 946 (Ariz.1958). What constitutes a reasonable fee depends on the type of case involved and the nature of the evidence presented. *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 673 P.2d 927, 931 (1983).

Trend seeks to recover fees under the terms of its May 2005 Fee Agreement with counsel. (document # 503, # 524) Trend asserts that the contract rate is an appropriate method to establish a reasonable fee. (document # 524 at 4) Alternatively, Trend asserts that if the Court determines that the contract rate cannot be used, a lodestar analysis should apply. *Id.* at 5. The Court will first address Trend's argument that fees should be awarded under the terms of the May 2005 Fee Agreement.

### I. Applicable Fee Agreement

██ Since the inception of this lawsuit, Trend and its counsel have modified their February 2001 Fee Agreement twice, in September 2003 and in May 2005. Trend argues that the May 2005 agreement governs the award of fees in this matter. Gametech asserts that the 2001 and 2003 Agreements apply.

In determining the amount of attorneys' fees that should be awarded to Trend, the Court must first determine which fee agreement should govern: (1) the May 2005 fee agreement which Trend and its counsel agreed upon after the jury's November 12, 2004 Special Verdict was entered in this matter and after Trend filed its original Application for Attorneys' Fees; or (2) the February 2001 and September 2003 agreements which were in place well before the trial and jury's verdict and before the original fee application was filed.

The attorneys' fee request in Trend's Original Application was based upon an hourly billing rate of $200 for Richard Chambliss for work between 2001 and Sep-

tember 2003 and a later blended rate of $165 per shareholder per hour and an 8% contingency based on a September 2003 revision of the fee agreement between Trend and its counsel. (document # 428 at 7–8) In its May 2005 Supplemental Application, Trend increased its demand for attorneys' fees to $1,386,630.15 based on an hourly shareholder rate of $165 and a 22% contingency pursuant to a post-verdict revision of the fee agreement between Trend and counsel. (document # 503, Chambliss Supp. Aff. at ¶ 10) Trend explains that it negotiated a new fee arrangement with counsel after the verdict was entered because Trend is unable to pay counsel and needs representation on appeal.

Trend does not cite any case law to support its argument that a prevailing party and its counsel, after having obtained a favorable verdict in a contract action and is thereby entitled to an award of reasonable attorney's fees as the prevailing party, can thereafter increase counsel's contingency fee percentage and shift that additional financial burden to the losing party. Indeed, the Court's independent research has found no case law presenting a similar situation. Trend relies on the affidavit of attorney Michael Stark of Lucia, Stark, & Williamson, L.L.P. to support its May 2005 fee arrangement. Mr. Stark informed Trend's counsel that he has accepted commercial cases on a reduced hourly rate with a 20% contingency. (Supp.App., Chambliss Supp. Aff. ¶ 4)

The Court finds that Mr. Stark's statements are not helpful to the resolution of this specific attorneys' fees issue. Mr. Stark offers no insight into whether it is proper for counsel and a client to enter into a new fee agreement after a verdict has been entered. Rather, Mr. Stark merely attests that he has entered into hybrid-fee agreements, an agreement combining an hourly rate and a contingency fee, at the inception of the representation.

Gametech does not object to Trend's 2003 Fee Agreement which is a hybrid arrangement. Gametech does not object to the use of a hybrid-fee agreement. Rather, it objects to Trend's tardy modification of the fee agreement to increase the contingency component from 8% to 22% after the jury has returned its verdict in favor of Trend. Thus, the issue before the Court is not the propriety of a hybrid-fee agreement, but the propriety of a post-verdict modification to increase the contingency component of such an agreement.

In addition to offering the affidavit of Mr. Stark, Trend attempts to justify its increased contingency fee on the ground that additional fees are needed, in part, to compensate Trend's counsel for services in connection with the pending appeals. (document # 503 at 4) Trend's counsel states that even after the fee agreement was modified in 2003 to provide for a reduced hourly rate and an 8% contingency fee, Trend was still unable to pay counsel. (document # 503 at 4) Counsel states that Trend "now owes counsel over $350,000 in unpaid fees and costs, has no meaningful way to pay the bill, and needs representation to defend Gametech's appeal of the judgment." (document # 503 at 4) Based on the foregoing circumstances, Trend and its counsel modified the September 2003 fee agreement to provide for continued billing at the reduced hourly rate of $165 and an increase in the contingency fee from 8% to 22%. (*Id.*) Trend's argument that the increase in the contingency amount was necessary to provide funds for Trend to pursue its appeal and defend against Gametech's appeal does not justify Trend's increased fee request. In the absence of a transfer of a timely-filed fees-on-appeal request to the district court for consideration pursuant to Ninth Circuit Civil Rule 39–1.8, a district court "is not authorized to rule on [a] request for appel-

late attorney's fees." *Cummings v. Connell,* 402 F.3d 936, 948 (9th Cir.2005).

After review of the record, the Court will not award attorneys' fees under the May 2005 Fee Agreement. Rather, the Court will apply the terms of the February 2001 and September 2003 Fee Agreements. Trend's effort to increase its attorneys' fees by increasing the contingency fee from 8% to 22% after the verdict was entered and attempting to now have Gametech pay the higher fees is improper. In 2003, Trend's counsel realized that Trend was unable to pay its customary hourly rates of $200 per hour for a partner or shareholder. To remedy this problem, counsel lowered that rate to $165 per hour and to offset this reduction Trend agreed to pay counsel 8% of any recovery. (document # 429, Exh. 2) Trend and its counsel waited to further modify the fee agreement until nearly two years had passed, when "over $350,000 in unpaid fees and costs" had accumulated, a month-long jury trial had concluded, the jury had issued its verdict in Trend's favor, and the Court had ruled that funds held in the restricted constructive trust would remain in the trust pending post-trial motions and the parties' appeals. Although counsel claims that the May 2005 modification was prompted by Trend's inability to pay counsels' fees, the May 2005 Agreement kept the $165 hourly rate in tact. Nevertheless, the May 2005 Agreement increased the contingency from 8% to 22%. Thus, the terms of the May 2005 Agreement did nothing to increase the likelihood that Trend would be able to pay counsels' hourly rate.

By increasing the contingency fee to 22%, the May 2005 Agreement provides Trend's counsel access to 22% (as opposed to 8%) of Trend's principal award from which to recover its unpaid attorneys' fees. Because the May 2005 Agreement was entered into after the verdict was entered, counsel knowingly attempted to shift this greater financial burden to Gametech. In view of the circumstances giving rise to the May 2005 Fee Agreement, it appears that counsel for Trend has had second thoughts about the terms of its September 2003 fee agreement (a reduced rate of $165/hour and an 8% contingency on any recovery) and is now trying to find a way to recover more of its unpaid fees knowing that Trend has prevailed at trial. When Trend and its counsel entered into the 2003 Agreement, they agreed that a $35 reduction in the hourly rate would be offset by an 8% contingency. It is doubtful that Trend and its counsel would have modified this fee agreement to increase the contingency fee to 22% had Trend not prevailed at trial. Indeed, such a modification to the fee agreement would have been nonsensical under those circumstances. Trend's counsel is now unhappy with the terms of its 2003 Fee agreement and sees Trend's success at trial as an opportunity to increase its recovery of its unpaid attorneys' fees.

In view of the late date on which Trend and its counsel modified their fee agreement and the drastic increase, from 8% to 22%, in the contingency fee, the Court declines to base an award of attorneys' fee award on the May 2005 Agreement. The Court will award reasonable attorneys' fees in accordance with the February 2001 and September 2003 fee agreements. While a prevailing party and its counsel are free to voluntarily renegotiate a binding fee agreement between themselves at any time, this Court will not foist the burden of increased fees upon the losing party post-verdict with the benefit of the prevailing party's 20/20 hindsight. In the Court's view, if such an award were imposed upon the unsuccessful party, it would be an unreasonable one.

■ In its Supplemental Application, Trend applies the contingency fee not only to Trend's 2.79 million dollar principal award but also to counsel's billable attorneys' fees, taxable costs, and non-taxable expenses. (document # 503, Chambliss Supp. Aff. at ¶ 10) Trend does not provide any authority to support its effort to bill Gametech twice for its attorneys' fees, taxable costs and related non-taxable expenses. Trend relies on the term "recovery" in its September 2003 and May 2005 agreements with counsel and asks the Court to apply the contingency percentage not only to its principal award in the litigation but also to the aggregate sum of its claimed attorneys' billable fees, taxable costs, and non-taxable expenses. (document # 503, Chambliss Supp. Aff. ¶ 10)

A February 2004 letter regarding the September 2003 Fee Agreement, the only evidence of the terms of that agreement which is before the Court, states that "[f]rom *any recovery* we obtain in this action, Trend Gaming Systems will pay eight percent as a contingent fee. *Additionally,* Trend ... will be responsible for the payment of any costs incurred in this litigation." (document # 429, Exh. 2)(emphasis added) This letter does not define the phrase "any recovery." However, it addresses "recovery" in a separate sentence from litigation costs. The letter clarifies that, in addition to paying counsel 8% of any recovery, Trend shall also be responsible for costs. The treatment of costs as separate from "any recovery" indicates that Trend and its counsel intended that the 8% only be applied to any principal award and not to other litigation costs and expenses or an award of attorneys' fees after trial.

Although the Court is not awarding fees under the terms of the May 2005 Agreement, it appears that Trend and its counsel attempted to expand the term "any recovery" by substituting the phrase "total amount recovered" (document # 503, Exh. A) to suggest that the contingency percentage also applies to attorneys' fees, costs, and expenses. The Arizona Supreme Court has held that a provision which permits counsel to retain any court-awarded attorneys' fees in addition to his contingency fee is improper double recovery. *In re Struthers,* 179 Ariz. 216, 877 P.2d 789 (Ariz.1994). Here, the Arizona Supreme Court explained that the "purpose of awarding fees to a successful litigant is not to provide the lawyer with a double payment bonus, but to defray the client's litigation expenses." *Id.* at 795 (citing A.R.S. § 12–341.01(B))(stating that an award of attorneys' fees in a contract case is intended "to mitigate the burden of the expense of litigation to establish a just claim or just defense."). The Court finds that the application of the contingency percentage to the aggregate of the principal award, attorneys fees, cost, and non-taxable expenses is improper under Arizona law. Fundamental fairness dictates that Trend should not recover its fees, costs, and expenses twice. Thus, the contingency percentage applies only to the principal award.

In summary, the Court will award reasonable attorneys' fees under the terms of the February 2001 and September 2003 Fee Agreements and will only apply the 8% contingency to Trend's principal award.

## II. Application of Lodestar Analysis and 25% Upward Adjustment

■ While Trend first seeks attorneys' fees based on the terms of its May 2005 Fee Agreement with counsel, in the alternative, it seeks an award based on a lodestar analysis with an upward adjustment. The Court, therefore, must determine whether a lodestar analysis is appropriate in this case.

In its original Application, Trend did not argue that a lodestar analysis should apply in this case. Rather, Trend's counsel attested that its blended rate of $ 165 per hour for Mr. Chambliss and Mr. Loy and the 8% contingency was the "best evidence of the reasonableness of the rates charged." (document # 428 at 6, Chambliss Aff. ¶ 13) Trend now asserts that its increased fee demand should be granted because the amount is consistent with the outcome of a lodestar analysis, adjusted upward by 25%. (document # 503 at 5) Gametech asserts that because Trend, in December of 2004, did not advance a lodestar analysis or upward adjustment, which now produces a fee claim of hundreds of thousands of dollars greater than Trend certified to be "reasonable" in its Original Application, it appears that Trend is using its Supplemental Application to recover much more than its reasonable attorneys' fees. Gametech asserts that a lodestar analysis does not apply to this case and that fees should be awarded pursuant to the terms of the 2001 and 2003 Fee Agreements.

The Court must determine whether a lodestar analysis is appropriate in this case when Trend and its counsel have a hybrid-fee agreement providing that Trend shall pay counsel a reduced hourly rate of $165 and 8% of any recovery in this litigation. As an initial matter, the Court finds it interesting that Trend added the lodestar argument only after it advanced the theory that the Court should award fees under a post-verdict Fee Agreement which increased the contingency component from 8% to 22%. Trend's recent addition of a lodestar analysis to its Fee Application suggests that Trend lacked confidence in its argument that the Court should award fees under the May 2005 post-verdict fee agreement and, therefore, Trend needed another theory to support its greatly increased fee demand.

In view of the fee agreement between Trend and its counsel which includes an hourly rate, Gametech asserts that Trend is a fee-paying client and, therefore, a lodestar analysis does not apply. Trend, on the other hand, argues that because the fee agreement has a contingency component, a lodestar analysis is proper. The parties cite *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (1983) in support of their arguments. Indeed, *China Doll* supports both Trend's and Gametech's arguments. *China Doll* involved commercial litigation where the prevailing party had agreed to pay its counsel an hourly billing rate, not a contingency fee. *Id.* at 933. The court in *China Doll* strongly suggests that a lodestar analysis does not apply in commercial cases between fee-paying clients:

> [I]n corporate and commercial litigation between fee-paying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case.

673 P.2d at 931–32. On the other hand, the *China Doll* court noted that in cases where fees are not paid on an hourly basis, such as public rights and contingency fee litigation, the most popular formula for calculating fees is the lodestar analysis. *Id.* at 931 n. 5. The lodestar analysis is used where fees are not actually paid on an hourly basis and where the prevailing party does not have an agreement with counsel setting the attorneys' billing rate for the representation. *Id.*

Trend cites several cases in support of its position that the lodestar analysis should be applied here. None of the cases Trend cites, however, supports that proposition. *ABC Supply Inc. v. Edwards*, 191 Ariz. 48, 952 P.2d 286 (1998)(involving the

propriety of a fee award calculated pursuant to an hourly fee agreement, not a lodestar analysis); *McGrath v. County of Nevada*, 67 F.3d 248 (9th Cir.1995)(§ 1983 civil rights case, not a commercial case, awarding attorneys' fees under 42 U.S.C. 1988(b)); *Cunningham v. County of Los Angeles*, 879 F.2d 481 (9th Cir.1988)(civil rights case, not a commercial case); *London v. Green Acres Trust*, 159 Ariz. 136, 765 P.2d 538 (1989)(involved the propriety of an award of attorneys' fees under the "bad faith" exception to the American rule barring attorney's fee awards where there has been no applicable statutory or contractual fee-shifting provision and no fee agreement between the attorney and his client in action under Consumer Fraud Act.). Trend also argues that because its fee arrangement has a contingency component, the lodestar analysis is appropriate. *China Doll*, 138 Ariz. at 187, 673 P.2d at 931. As set forth above, *China Doll* supports the proposition that the lodestar analysis applies in a case wherein fees are awarded solely based on a contingency-fee arrangement. That case does not indicate, however, that such an analysis is appropriate when counsel and his client also have agreed to an hourly billing rate.

The Court finds that although this matter involves a hybrid-fee agreement with a contingency fee component, the fee agreement is one that contemplates a fee-paying client. The contingent fee of 8% is only intended to offset a $35 per hour fee reduction. Here, Trend has a fee agreement setting forth counsel's billing rates for the representation. Trend's original agreement with counsel, dated February 6, 2001, provided that Trend would pay an hourly rate of $200 for Mr. Chambliss' time. (document # 428, Chambliss Aff., Exh. 1) Trend and its counsel thereafter modified their hourly fee arrangement, effective September 1, 2003, to include an 8% contingency fee component in exchange for a $35 decrease in the hourly shareholder/partner rate, i.e., from $200 to $165. (document # 428, Chambliss Aff., Exh. 2, September 2003 Agreement) Because the fee agreement between Trend and its counsel contemplates a fee-paying client and includes an hourly billing rate, the Court finds that the lodestar analysis does not apply.

Trend's belated request for a lodestar analysis, based on much higher billing rates, suggests the law firm's opinion that its negotiated hourly fees were too low and should be adjusted upward at this late date. Trend, however, has not offered any evidence suggesting that it would have agreed to pay Mr. Chambliss' firm the higher rates during the pendency of this case. *Sanborn v. Brooker & Wake Property Management, Inc.*, 178 Ariz. 425, 874 P.2d 982, 988 n. 3 (1994)("The trial judge ... has broad discretion in fixing the amount of the fee provided that 'such award may not exceed the amount paid or agreed to be paid.'") (Emphasis in original.).

Under *China Doll*, Trend's February 2001 and September 2003 Agreements with counsel are the appropriate benchmarks for calculating a reasonable fee in this matter. *China Doll*, 138 Ariz. at 187, 673 P.2d at 931. Counsels' hindsight after the verdict that they should have charged Trend a higher rate so that they could recover a greater fee award from Gametech does not justify deviating from the terms of the February 2001 and September 2003 fee agreements to which Trend and its counsel have bound themselves during the pendency of this litigation. *China Doll*, 673 P.2d at 932 ("[I]t is unlikely that the court will adjust the [agreed] hourly rate upward.")

Although the lodestar analysis does not apply, Trend further argues that the lodestar amount should be adjusted upward because this case was "complex," because

counsel "had to turn away other employment," because "Trend's ability to pay the costs of this litigation was put in serious doubt," and because counsel obtained one of the ten largest verdicts in Arizona in 2004. (document # 503, Chambliss Supp. Aff. ¶ 19–22) Under Arizona law, however, "the lodestar figure should be adjusted upward or enhanced only in rare and exceptional circumstances." *Kadish v. State Land Department*, 177 Ariz. 322, 868 P.2d 335, 346 (1994) (citations omitted). The court in *Kadish*, in affirming the trial court's refusal to enhance a lodestar fee calculation, relied upon the Supreme Court's discussion in *Pennsylvania v. Delaware Valley Citizen's Counsel for Clean Air*, 478 U.S. 546, 565–66, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) and its earlier decision in *Blum v. Stenson*, 465 U.S. 886, 897–901, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984):

> As explained by the *Pennsylvania* Court, in *Blum*, the Court found that "[w]hen ... the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is *presumed* to be the reasonable fee" to which counsel is entitled.... *Blum* also limited the factors which a district court may consider in determining whether to make adjustments to the lodestar amount .... [We have held] that the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award. Although upward adjustments of the lodestar figure are still permissible, ... such modifications are proper only in certain 'rare' and exceptional cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts.

*Kadish*, 868 P.2d at 346 (quoting *Pennsylvania*, 478 U.S. at 565, 106 S.Ct. 3088)(internal citations omitted).

The Supreme Court's discussion in *Pennsylvania* is applicable here. Even if a lodestar analysis applied here, none of the factors Trend cites in support of an upward adjustment made this case so "rare" or "exceptional" to overcome the presumption that the lodestar alone is the reasonable fee. The factors upon which Trend bases its argument for an upward adjustment, the complexity of the case, risks undertaken, and the results obtained, while all true in this case, are also the type of factors that are "presumably subsumed within the initial [lodestar] calculation," and "cannot serve as an independent basis for increasing the basic fee award." *Id.* Additionally, counsel's assertion that the complexity of this case required him to forego other employment does not distinguish this case from any other complex commercial cases. The Court concludes that the lodestar analysis and a 25 % upward adjustment do not apply in this case. Accordingly, the terms of the February 2001 Fee Agreement and the September 2003 Fee Agreement govern the award of reasonable attorneys' fees in this matter.

## III. Reasonableness of Number of Hours Claimed

Having determined that the attorneys' fee award is governed by the 2001 and 2003 Fee Agreements, the Court must determine the reasonableness of the number of hours which Trend claims.

In opposition to the fee applications Gametech argues that the hours which Trend's counsel claim should be adjusted downward. "Just as the agreed upon billing rate between the parties may be considered unreasonable, likewise the amount of hours claimed may also be unreason-

able." *China Doll,* 138 Ariz. at 188, 673 P.2d 927. Gametech argues that Trend's fee demand includes hundreds of hours of attorney and paralegal time devoted to claims and other initiatives that Trend lost, and to counterclaims upon which Trend only received token victories. (See, Glasser Aff.) Gametech further argues that Trend failed to achieve its overall objective in its countersuit against Gametech, because it was not able to prove economic damages with respect to three of the four purported breaches of contract, and consequently recovered $2,791,117.37 (after offset of Gametech's $735,648.09 damages award), or 35% of the $7,948,046.74 it sought in monetary relief. Therefore, Gametech argues that the Court should reduce the fee request by 2/3 because Trend only obtained 1/3 of the relief sought.

As an initial matter, Trend replies that Gametech's math is incorrect. (document # 524 at 7) Trend claims that it sought an award of approximately $3.5 million and that it recovered 44% of that figure. Second, Trend argues that the foregoing percentages do not reflect the amount of time and effort spent on the primary issues in the case, the basis upon which any adjustment should be made. Thus, there is no rational basis for dividing the more successful from the less successful claims in establishing the reasonableness of the fee award. The Court agrees with Trend.

█ There is no basis in this case for reducing the fee award based on the percentage of the award sought that Trend recovered. The fact that Trend did not recover the full amount of relief requested does not mean that Trend was not the prevailing party. *Ocean West Contractors, Inc., v. Halec Construction Co., Inc.,* 123 Ariz. 470, 473, 600 P.2d 1102 (Ariz.1979). Indeed, Arizona courts routinely reject the notion that the percentage of recovery is an indication of the prevailing party. *Id;*

*Drozda v. McComas,* 181 Ariz. 82, 85, 887 P.2d 612, 615 (1994); *McEvoy,* 34 P.3d at 981 ("... the 'successful [or prevailing] party' is the party who wins the lawsuit.").

Gametech further argues that the Court should reduce Trend's attorneys' fees because Trend's fees' application lacks "sufficient detail to enable the court to assess the reasonableness of the time incurred." *China Doll,* 138 Ariz. at 188, 673 P.2d 927 ("An attorney who hopes to obtain an allowance from the court should keep accurate and current records of work done and time spent."); LRCiv. 54.2(e)(2)("The party seeking an award of fees must adequately describe the services rendered so that the reasonableness of the charge can be evaluated.") Gametech argues that Trend's original and Supplemental Applications do not contain sufficient detail for the Court to determine which of the claimed 4,107.5 hours of attorney and paralegal time were devoted to the single contract counterclaim upon which Trend fully succeeded versus the claims that Trend lost and the three breach of contract counterclaims for which Trend achieved only token victories because it was not able to show that it suffered any damages. (Glasser Aff. ¶ 3)

Gametech specifically argues that the Court should omit the following 633.3 hours of time:

(1) 523 hours of attorney time reflected in bulk time entries giving rise to fees of $52,228.60. (Glasser Aff. ¶ 4(d), Exh. D) Gametech argues that Trend's counsel, in aggregating its time entries, has impermissibly deprived the Court of the ability to assess the reasonableness of time spent on each task. *Metro Data Sys., Inc. v. Durango Sys., Inc.,* 597 F.Supp. 244 (D.Ariz. 1984).

Arizona courts recognize that where a claim for relief involves related legal theories, " '[m]uch of counsel's time will be devoted generally to the litigation as a

whole, making it difficult to divide the hours expended on a claim-by-claim basis.'" *China Doll,* 138 Ariz. at 189, 673 P.2d at 933 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). In such a case, counsel should be awarded fees even for time spent on unsuccessful claims. *Id.* Arizona courts also recognize that "[w]here claims could have been litigated separately, fees should not be awarded for those unsuccessful separate and distinct claims which are unrelated to the claim upon which the party prevailed." *China Doll,* 138 Ariz. at 189, 673 P.2d 927.

■■■ Here, Trend acknowledges that there were three unsuccessful claims. Trend has reviewed the fee application and withdrawn time entries related to the consumer fraud claim, the commission claim, and the product exclusivity claim. Trend has reduced its time by 22.7 hours to account for billing entries attributable to those claims. (Second Supp. Chambliss Aff. ¶ 3, Exh. B) The Court finds that the reduction by 22.7 hours is sufficient to reflect time devoted to unsuccessful claims. Arizona courts recognize that there is "no precise rule or formula" for determining how to reduce an award for time spent on unsuccessful claims. *China Doll,* 138 Ariz. at 189, 673 P.2d 927 (citation omitted.).

Trend further argues that its fee application contains sufficient detail to allow for an objective review of whether the hours billed are reasonable. The Court agrees. The Court notes that the application, as supplemented, contains 230 pages of itemized time entries. The itemization includes the timekeeper, the service provided, the date of service, and the amount billed for the service. A time entry which

Gametech offers as a "typical bulk time entry" was the billing entry of Richard Chambliss for 12/16/02. (document # 515 ¶ 4(d)) Gametech criticizes that entry for including multiple tasks for one day without separately billing for each task. On that day, an evidentiary hearing was scheduled on the constructive trust motion. The Court finds that the billing for December 16, 2002 was reasonable.

In further support of its billing, Trend argues that the challenged "bulk billing" falls into two categories: (1) billing entries where two or more activities were billed together; or (2) bulk billing for hearings, depositions or preparation for trial. (document # 515, Exh. D 9/23/02, 9/24/02, and 10/1/02 entries for R. Chambliss and 8/9/02, 3/26/03, 4/13/04 entries for R. Chambliss) The Court finds that such entries are legally sufficient upon which fees may be awarded.

Gametech specifically challenges billing entries for Jane Foster, a paralegal, who had several multiple entries per day without segregating time. (document # 515, Exh. D) Many of those entries were data entries or exhibit entries preparing the data base for this action. *Id.* As the Court has previously noted, this was a complex matter that involved thousands of pages of documents, dozens of depositions, and a four-week jury trial. The Court concludes that the hours billed by Ms. Foster were reasonable.

(2) Gametech also challenges 11.8 hours of attorney time devoted to tasks not related to this litigation, giving rise to fees of $2,083.00. (document # 515, Glasser Aff. ¶ 4(b), Exh. B) Trend has agreed to reduce the fees to which Mr. Glasser refers in Exhibit B to his affidavit by $1917.[4]

---

4. In his Second Supplemental Affidavit, Mr. Chambliss states that Trend agrees to omit all time entries cited in Exhibit B to the Glasser Affidavit, except the following entries: (1) .5 hours billed on 11/25/92 by Mr. Chambliss regarding discussing the fee agreement with Trend, and (2) .4 hours billed by Mr. Loy on 1/26/04 regarding trial exhibits and deposition of Jane Thompson. (Second Supplemental Chambliss Affidavit).

Trend has also agreed to reduce its Supplemental Fee Application by .8 hours incurred for legal services related to the appeal and the Texas Lottery Commission proceedings. (document # 535 at 6) The Court finds these reductions are appropriate and will not further reduce the hours on this basis.

(3) Gametech challenges 41.3 hours of attorney time devoted to the preparation of the original and Supplemental Applications giving rise to fees of $6,295.50. (Glasser Aff. ¶ 4(h), Exh. H) Gametech argues that Trend, in violation of LRCiv. 54.2(c)(2)("If the moving party claims entitlement to fees for preparing the motion and memorandum for award of attorneys' fees ... such party also must cite the applicable legal authority supporting such specific request."), cites no governing Arizona precedent supporting its request for an award of such fees pursuant to a contractual fee shifting provision. Trend, on the other hand, contends that it has provided legal authority in support of its request to recover attorneys' fees incurred in preparing the fee application. (document # 535 at 2) Specifically, Trend cites *Bennett v. Appaloosa Horse Club*, 201 Ariz. 372, 378, 35 P.3d 426, 432 (2001) for the proposition that an award of attorneys' fees to the prevailing party is mandatory where there is a contractual provision. Trend asserts that the issue is whether a reasonable interpretation of the parties' fee provision set forth in paragraph 8.9 of the Distribution Agreement includes recovery of attorneys' fees incurred in preparing a fee application. As set forth above, paragraph 8.9 of the Distribution Agreement provides that the prevailing party shall be entitled to reimbursement for its expenses, "including court costs and reasonable attorneys' fees." This provision does not distinguish between attorneys' fees incurred in preparing a fee application and other attorneys' fees. Rather, the fee provision simply uses the broad term "attorneys' fees."

Arizona law supports the recovery of attorneys' fees incurred in preparing a fee application. In *China Doll*, the court stated that the prevailing party is entitled to recover reasonable attorneys' fees for "every item of service which ... would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest...." 138 Ariz. at 188, 673 P.2d at 932. The *China Doll* court listed several examples of the types of services which might be included in a fee application. Among those examples was time expended in preparing post-decision motions. *Id.* A motion for attorneys' fees is a post-decision motion and it takes considerable time in some cases for any "reasonable and prudent lawyer" to prepare an attorney's fees application which "militates the burden of the expense of litigation to establish a just claim or just defense" for the prevailing party. *Associated Indemnity v. Warner*, 143 Ariz. 567, 569, 694 P.2d 1181, 1183 (1985)(purpose of award of attorney's fees is to "mitigate the burden of the expense of litigation to establish a just claim or just defense."); A.R.S. § 12–341.01(B). Including the reasonable time to prepare an attorney's fees application in an award of attorney's fees to the prevailing party furthers the purpose of awarding such fees and does not constitute a windfall or double recovery. In view of the foregoing, the Court concludes that reasonable attorneys' fees incurred in preparing the fee application are recoverable in this case and under Arizona law.

(4) Gametech also challenges 9 hours of attorney time associated with a sanctions motion in 2003 for which Gametech has already compensated Trend in the amount of $1,590.00. Trend claims that the value of the nine hours was $1,800. In its Reply, Trend agrees to omit its request for attor-

neys' fees previously awarded as sanctions against Gametech in the amount of $1,800. (document # 524 at 11, Exh. G to Glasser Affidavit)

■■ (5) Gametech objects to 7.4 hours of attorney time devoted to an expert witness that Trend did not to use in this case. Gametech argues that the expert "contributed nothing" to the outcome of this case, giving rise to fees of $1,480. Trend contends that counsel spent time with this expert to help counsel understand the damage claims in this action. (Second Supp. Chambliss Aff., ¶ 2(a)) The Court finds no basis for excluding the reasonable hours related to consulting an expert who assisted counsel in understanding the issues in the litigation even though that expert witness did not testify during the trial.

■■ (6) Gametech objects to 40.3 hours of attorney travel time giving rise to fees of $6,877. L.R.Civ. 54.2(e)(2)(B). As Trend states, *China Doll* specifically identifies travel time as a type of service which may be included in a fee application. 138 Ariz. at 188, 673 P.2d at 932. Thus, travel time may be appropriately claimed in an application for attorneys' fees under Arizona law. The Court notes that counsel billed Trend for one-half of the total travel time (either time to the deposition location or from that location.). The travel to the depositions was necessary and the charges were reasonable. The Court concludes that Trend is entitled to fees for time that its lawyers spent traveling to and from out-of-state depositions.

## IV. Additional Fees

In its Reply filed June 24, 2005, Trend argues that it is entitled to recover fees it has incurred since the Supplemental Application was filed. (document # 524) Trend argues that it has had to respond to another post-verdict motion filed by Gametech and incur additional fees in responding to Gametech's opposition to Trend's fee request. Trend asserts that those additional fees total 62.5 hours and are itemized in exhibit C to the Second Supplemental Chambliss Affidavit. (document # 524, # 525)

In a Sur–Reply filed June 30, 2005, Gametech claims that Trend's demand for attorneys' fees incurred between May 7, 2005 and June 24, 2005 is unreasonable. (document # 534 at 2) Gametech contends that Trend's counsel devoted 35 of the 62.5 newly-claimed hours to the preparation of Trend's Fee Application Reply, the Second Supplemental Chambliss Affidavit, the Exhibits attached thereto, and Trend's Response to Gametech's Motion to Strike Paragraph Four of the Supplemental Chambliss Affidavit. Gametech asserts that Trend is not entitled to recover fees for preparing the fee application and supporting documents because it fails to cite supporting legal authority. LRCiv 54.2(c)(2).

Contrary to Gametech's assertion and as has previously been discussed herein, Trend has cited legal authority to support its request to recover fees incurred in preparing the fee application. The Court finds that Trend can recover fees for work related to preparing and defending the fee application.

Gametech also asserts that even if Trend is entitled to recover attorneys' fees incurred in preparing the fee application, Trend has claimed an unreasonable number of hours. Specifically, Gametech challenges time that Trend's counsel spent correcting errors made in its original fee application, researching unchallenged legal positions, or pursuing projects unrelated to this litigation.

The Court finds that the number of hours Trend's counsel devoted to pursuing its fee application, including responding to Gametech's arguments, are reasonable.

Trend's counsel was pursuing his client's interests by ensuring that it thoroughly addressed Gametech's challenges to the fee application. To the extent that Gametech claims that Trend should not be awarded expenses related to pursuing other matters, Gametech has previously raised this argument. The Court also notes that Trend concedes that its Supplemental Fee Application should be reduced by .8 hours incurred for legal services related to the appeal and the Texas Lottery Commission proceeding. (document # at 5–6, July 18, 2005). The Court, therefore, will reduce the request by .8 hours and finds the balance of this time reasonable.

### NON–TAXABLE EXPENSES AND TAXABLE COSTS

In addition to attorneys' fees, Trend also seeks an award of taxable costs and related litigation expenses. Title 28 U.S.C. § 1920 provides that a prevailing party may recover taxable costs. Trend seeks an award of $26,769.66 in taxable costs. (document # 503, Exh. 1 ¶ 10)

■■■ Trend also seeks non-taxable expenses in the amount of $34,079.54. (document # 503, Exh. 1 ¶ 8) The Distribution Agreement provides that the prevailing party "shall be entitled ... to reimbursement for its expenses." Gametech does not dispute that the parties' agreement provides for the recovery of litigation expenses. Additionally, where a fee agreement requires a client to reimburse his attorney for non-taxable expenses, the non-taxable expenses are recoverable from the adverse party. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.1994) (citations omitted)(stating that a successful party is entitled to "recover as part of the award of attorneys' fees those out-of-pocket expenses that would normally be charged to a fee paying client."). The 2001 and 2003 fee agreements between Trend and its counsel establish that Trend was obligated

to reimburse the non-taxable expenses incurred in this litigation.

Gametech argues that Trend's claimed taxable costs and non-taxable expenses should be reduced by $322.43 as set forth in the Glasser Affidavit at ¶ 4(c) and (e). (document # 514 at 17, document # 515) In his Affidavit in Support of Gametech's response to Trend's Original and Supplemental Application for an Award of Attorneys' Fees (document # 515), Daniel Glasser, an attorney for Gametech, states that Trend should not be entitled to recover costs that Gametech characterizes as "irrelevant or improper." (document # 515 at ¶ 4(c) and (e)) First, Mr. Glasser asserts that counsel for Trend billed expenses to Trend during the time that Trend was in bankruptcy and this action was stayed. Gametech asserts that billings during this time must have related to work done in support of the bankruptcy and not this litigation. Mr. Glasser also asserts that Trend was billed for costs associated with the investigation by the Texas Lottery Commission.

Mr. Glasser has attached an exhibit itemizing the "irrelevant costs" which total $114.29. (document # 515, Exh. C) These entries are for work performed from December 31, 2002 to October 1, 2003, while this matter was stayed. Trend does not contest this argument. (Second Supp. Chambliss Aff. ¶ 2(b)). The Court, therefore, will reduce the fee award by $114.29.

Mr. Glasser also asserts that Trend was billed for "improper costs" related to legal research totaling $208.14. (document # 515 ¶ 4(e), Exh. E) Mr. Glasser asserts that Trend's original Fee Application fails to identify what research was performed using Westlaw in violation of LRCiv 54.2(e)(2)(B) which provides that time entries relating to legal research must "identify the specify legal research issue researched ...." *Id.* Mr. Glasser asserts

that the expenses should be reduced by $208.14 for this error. Trend does not contest Gametech's objection. (Second Supp. Chambliss Aff., ¶ 2(e)) Therefore, the Court finds that the non-taxable expenses should be reduced by $208.14.

In summary, the Court will reduce Trend's requested non-taxable expenses by $322.43.

### SUMMARY

The Court finds that Trend has established that it is entitled to recover the following reasonable amounts based on the 2001 and 2003 Fee Agreements: (1) attorneys' fees in the amount of $625,546.95 based on counsels' billing rates set forth in the February 2001 and September 2003 Fee Agreements; (2) attorneys' fees based on the contingency fee of eight percent (8%) of Trend's principal award of $2,791,117.37 or $223,289.38; (3) taxable costs in the amount of $26,769.66, and (4) non-taxable expenses in the amount of $33,757.11.

In accordance with the foregoing,

**IT IS ORDERED** that Gametech's request for oral argument is **DENIED.**

**IT IS FURTHER ORDERED** that in accordance with Trend's Application (document # 428) and Supplemental Application for Attorneys' Fees, Costs and Expenses (document # 503), Trend is awarded: (1) attorneys' fees in the amount of $848,836.33; (2) taxable costs in the amount of $26,769.66, and (4) non-taxable expenses in the amount of $33,757.11. The total sum is $909,363.10. Judgment shall be by a separate document.

**IT IS FURTHER ORDERED** that Gametech's Motion to Strike Paragraph Four of the Supplemental Affidavit of Richard E. Chambliss in Support of Trend's Application for Attorneys' Fees (document # 513) and Motion to Strike the

Affidavit of Michael Stark (document # 528) are DENIED.